**Barbara HAAG, Plaintiff,**

v.

**BOARD OF EDUCATION, et al., Defendants.**

No. 86 C 20199.

United States District Court, N.D. Illinois, W.D.

March 17, 1987.

Edward Diedrich, DeKalb, Ill., for plaintiff.

S. Bennet Rodick, Gottlieb & Schwartz, Chicago, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the defendants' motion to dismiss Counts I, II, III, IV and V of the complaint for lack of jurisdiction and Counts I, II, III, and IV for failure to state a claim upon which relief can be granted. The defendants have also moved to dismiss the plaintiff's request for punitive damages from Count II and to dismiss the individual defendants from Counts III, IV, and V. For the reasons stated herein, the court grants the defendants' motion to dismiss Counts III and IV (Title VII), and to dismiss plaintiff's request for punitive damages in Count II. The court denies the defendants' motion to dismiss Counts I, II, and V.

## BACKGROUND

For purposes of this motion, the court accepts as true the plaintiff's allegations,

and all of the reasonable inferences therefrom. In so doing, the facts of this case appear as follows:

In 1965 the defendant Board of Education of Somonauk School District Unit No. 432 hired the plaintiff, Barbara Haag, as a physical education teacher. In 1972 the defendant Board granted her tenured status with the Board of Education. Until the time of Haag's resignation, she performed her teaching duties competently, and involved herself in extra-curricular activities of the school. She encountered normal disciplinary problems with her students and disciplined them in accordance with the student handbook.

In May of 1983, the defendant Underwood, as superintendent of the high school, told Haag that the Board had voted for her resignation. Underwood said the reasons for this vote were that Haag did not dress properly for her physical education class, that according to complaints from parents Haag was too strict and excessive in discipline, and that she did not require the girls to shower. Haag in fact dressed similarly to the male physical education teachers, allowed her students to take showers, and followed the guidelines for discipline in the student handbook. Further, defendants Magnusun, the high school principal, and Underwood did not reprimand the male teachers who disciplined students in ways not in accordance with the student handbook.

Haag refused to resign at that time. When she attempted to resume her regular teaching duties in August, 1983, she discovered that the Board had taken all of her regular teaching duties away from her. Haag felt the Board was forcing her out of her tenured employment position and submitted her resignation on August 30, 1983.

On April 16, 1984, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC issued her a notice of right to sue on March 11, 1986.

Plaintiff Haag filed the instant lawsuit on June 6, 1986. Her five-count complaint seeks redress for intentional discrimination in employment because of her gender and age, and for depriving her of liberty and property without due process of law. The plaintiff brings her complaint under four separate federal statutes: the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982); Title VII, 42 U.S.C. § 2000e et seq., (1982); the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) (1982) (FLSA); and the Age Discrimination in Employment Act, 29 U.S.C. § 621 (1982) (ADEA). The plaintiff claims that the discrimination occurred in the unequal disciplinary treatment of the plaintiff and her male colleagues, in the unequal requirements of attire for the plaintiff and her male colleagues, in the Board's request that she resign and its subsequent constructive discharge of her, and in the Board's later employment of a younger teacher to replace her.

The defendants have moved to dismiss plaintiff's complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted. The defendants have also moved to dismiss the plaintiff's request for punitive damages in Count II and to dismiss the individual defendants from Counts III, IV, and V. For the purpose of clarity, the following discussion will treat separately each defense that the defendants have set forth for dismissing one or more of the plaintiff's counts against them.

### DISCUSSION

#### A. Section 1983 Statute of Limitations

The defendants contend that Counts I and II, filed pursuant to section 1983, were not filed within the applicable statute of limitations. This court disagrees.

In Illinois the limitation period for a section 1983 action is now two years. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Based on this alone, the plaintiff's complaint would not be timely filed. Before the *Wilson* decision, however, federal courts in Illinois applied a five-year statute of limitations for section 1983 actions. The Seventh Circuit has enunciated a rule, applicable here, to make more equitable the transition between the former five-year statute of limitations and

the relatively new two-year statute of limitations for section 1983. In *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986), the Seventh Circuit held that a plaintiff in Illinois whose section 1983 cause of action accrued before the *Wilson* decision on April 17, 1985, has either five years from the date on which his cause of action accrued or two years from the date of *Wilson*, whichever period is shorter, in which to file suit.

Applying *Anton*, this court holds that the plaintiff's section 1983 counts were timely filed. Her cause of action accrued on August 30, 1983, before the *Wilson* decision. Her statute of limitations would run on April 17, 1987, two years from the date of the *Wilson* decision. The plaintiff filed suit on June 6, 1986. Accordingly, the court denies defendants' motion to dismiss Counts I and II.

**B. Section 2000e of Title VII**

█ The plaintiff has filed Counts III and IV pursuant to Title VII. The defendants assert that the court lacks subject matter jurisdiction over Counts III and IV because the plaintiff failed to file a timely charge of discrimination with the EEOC. Failure to file a timely charge with the EEOC bars suit under Title VII. *See* 42 U.S.C. § 2000e–5(f)(1). Title VII contains alternative time periods in which a charge will be considered timely filed with the EEOC. In states with their own agency to investigate charges of discrimination—"deferral" states—complainants have 300 days to file their charge with the EEOC. Otherwise, complainants have 180 days to file with the EEOC. The plaintiff here admits that she did not file within 180 days, but contends that because Illinois is a deferral state, she was entitled to the 300–day extended period to file with the EEOC. *See* 42 U.S.C. § 2000e–5(e). The plaintiff filed her charge with the EEOC 229 days after she tendered her resignation.

In Illinois, complainants must file charges of discrimination with the Illinois Department of Human Relations (IDHR) within 180 days of the discriminatory act. The plaintiff also failed to file with the IDHR within 180 days, but did file on the 216th day after she tendered her resignation.

The difficulty presented here is that Title VII on its face is ambiguous about whether or not a plaintiff in a deferral state must file a timely charge with the state agency in order to have the benefit of the extended 300–day period to file with the EEOC.

This court has previously held that to claim the 300–day extended filing period with the EEOC, the complainant must have filed with the IDHR within 180 days of the discriminatory act. *Walker v. Woodward Governor Company*, 631 F.Supp. 91 (N.D. Ill.1986). The court notes that other courts in this district have held that untimely filings with the IDHR do not deny a complainant access to the 300–day extended filing period with the EEOC. *See, e.g., Sere v. Board of Trustees of the University of Illinois*, 628 F.Supp. 1543 (N.D.Ill. 1986). In addition, several circuit courts have held that an untimely filing with the state agency will not bar suit under Title VII. *Thomas v. Florida Power & Light Co.*, 764 F.2d 768 (11th Cir.1985); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3rd Cir.1984); *Smith v. Oral Roberts Evangelistic Association, Inc.*, 731 F.2d 684 (10th Cir.1984), *Rasimas v. Michigan Department of Public Health*, 714 F.2d 614 (6th Cir.1983). However, this court finds no basis to distinguish the instant case from *Walker*. Further, although the Seventh Circuit has declined to rule expressly on this issue, this court's interpretation of the statute finds support in the strong dicta of the Seventh Circuit in *Martinez v. United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1373*, 772 F.2d 348 (7th Cir.1985).

In *Martinez*, the plaintiff lived in a deferral state but failed to file a timely state charge. She did file her charge with the EEOC within 300 days. The appellate court noted that under Title VII a state agency has exclusive jurisdiction over a charge for 60 days. A complainant may not file a charge with the EEOC until the state agency terminates its proceedings or

60 days has expired. The purpose for this deference to a state agency is to give states the opportunity to investigate and settle disputes before involving the federal government. The deferral system would be futile if complainants could file charges with a state agency after the agency's jurisdiction had expired.

The Seventh Circuit also suggested that a 180–day period for filing with the state agency might have barred the plaintiff's Title VII suit, by an untimely filing of state charges. *Martinez*, 772 F.2d at 350. Nevertheless, the court limited its holding to a statement that complainants in deferral states must have at least the 180 days they would have in non-deferral states. Consequently, the abbreviated 90–day state filing period would not render a filing with the EEOC untimely.

Based on this court's previous interpretation of Title VII and the Seventh Circuit's dicta in *Martinez*, this court finds that the plaintiff's untimely filing with the IDHR bars suit under Title VII. The plaintiff's Counts III and IV are therefore dismissed.

### C. Claim for Punitive Damages Under Section 1983

■ Also in her section 1983 count, the plaintiff demands punitive damages against the defendants. The defendants contend that governmental entities are immune from liability from punitive damages under section 1983. *Newport v. Fact Concerts*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Nevertheless, state law may waive that immunity. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). The plaintiff relies on *Kolar v. Sangamon County*, 756 F.2d 564 (7th Cir.1985), which found that Ill.Rev. Stat. ch. 85, § 9–102 (1985), created such a waiver. *Kolar*, however, found only that section 9–102 waived county immunity from punitive damages. The defendants in the instant case are a board of education and its employees. This court is unwilling to extend to a local school board the waiver of immunity found in *Kolar*. The court grants the defendants' motion to dismiss plaintiff's demand for punitive damages.

### D. Requirement of "Custom" or "Usage" in Section 1983 Action

■ The defendant Board of Education next contends that the plaintiff has alleged only a single act of discrimination against her, and not a "policy" or "custom" of the Board which would violate section 1983.

The defendant relies on *Lyman v. Board of Education*, 605 F.Supp. 193, (N.D.Ill. 1985), which dismissed a section 1983 action against board of education. The court in *Lyman* relied on *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to hold that a single instance of unconstitutional firing does not create an official policy or custom for which a municipality could be held liable.

The Supreme Court has since made it clear that under *Monell* municipal liability may indeed attach to a single decision by a municipal policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The court in *Pembaur* held that when a governmental policymaker properly decides to adopt a particular course of action, that decision represents an act of official governmental policy. *Pembaur*, 475 U.S. at ——, 106 S.Ct. at 1299. The remaining question is whether or not the defendant Board was a policymaker whose single act could give rise to municipal liability under *Pembaur*. Final policymaking authority is a matter of state law. *Id.* at ——, 106 S.Ct. at 1300.

In Illinois, a board of education is granted the authority to employ and dismiss teachers. Ill.Rev.Stat. ch. 122, § 10–21.1, –22.4 (1985). These powers have been held to be non-delegable powers, *Paprocki v. Board of Education of McHenry Community High School, Dist. No. 156, McHenry County*, 31 Ill.App.3d 112, 334 N.E.2d 841 (1975), which must be exercised by the school board itself. *Board of Education of School Dist. No. 189 v. Cahokia Dist. Council No. 58*, 93 Ill.App.3d 376, 48 Ill. Dec. 749, 417 N.E.2d 151 (1981). This court finds that the decision to request the plaintiff's resignation was within the exclusive power of the defendant Board to

make. The defendant board established official municipal policy for which it may be exposed to liability under section 1983. The court denies defendant's motion to dismiss Counts I and II.

### E. The Fair Labor Standards Act

Count IV of Plaintiff's complaint alleges a violation of the FLSA. The FLSA makes it unlawful for any employer to discharge or discriminate against an employee because the employee has asserted some right under the FLSA. 29 U.S.C. § 215. The plaintiff has not alleged this kind of retaliation. Nor has the plaintiff alleged any facts which would allow the court to infer a violation of this section of the FLSA. Further, the court fails to find anything in the plaintiff's complaint which would support finding a violation of any section of the FLSA. For these reasons, the court grants defendants' motion to dismiss Count IV of plaintiff's complaint for failure to state a claim upon which relief can be granted.

### F. Prima Facie Case of Gender Discrimination

■ Defendants next move to dismiss Counts I, II, and III on the ground that the plaintiff has failed to allege a *prima facie* case of gender discrimination. The court will consider this only with regard to Counts I and II, as Count III has already been dismissed.

The Supreme Court has set forth the elements of a *prima facie* case of discrimination based on disparate treatment in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Seventh Circuit has applied these elements to cases of gender discrimination by requiring (1) that the plaintiff belong to a protected group under Title VII; (2) that the plaintiff applied and was qualified for the job or promotion for which the employer was considering applicants; (3) that despite his or her qualifications the applicant was rejected or not promoted; and (4) that after the plaintiff's rejection, the employer continued to seek or consider applicants of the plaintiff's qualifications.

*Solo Cup Co. v. Federal Insurance Co.,* 619 F.2d 1178 (7th Cir.1980); *see also, Kier v. Commercial Union Ins. Cos.,* 808 F.2d 1254 (7th Cir.1987) (applying same standard to age discrimination).

The defendants assert, however, that another Seventh Circuit Case, *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277 (7th Cir.1977), requires the plaintiff to allege that "after her discharge the employer assigned those who were not of Plaintiff's gender to perform the same work." Defendants' brief at 13. Defendants' assertion is incorrect at best. Nowhere in *Flowers* does the court hold that a necessary element of a discrimination case is the allegation that the plaintiff was replaced by a member of an unprotected group. To the contrary, a court in this district has held that replacing a complainant with a person of the same minority group does not by itself defeat a claim of discrimination. *Langster v. Schweiker,* 565 F.Supp. 407 (N.D.Ill.1983).

The court relies on the elements of a gender discrimination case as set forth in *Solo Cup.* In so doing, the court finds that plaintiff has alleged facts to support her case. She has alleged that she is a woman, that she was qualified for her job, and that she was constructively discharged. By her allegation that the Board filled her position after her resignation, the court can infer that the Board continued to seek applicants of plaintiff's qualifications. The court therefore denies defendants' motion to dismiss the plaintiff's claims of gender discrimination.

### G. Individual Defendants Not Named in EEOC Charge

■ The individual defendants, Underwood and Magnusun, move to dismiss Counts III, IV, and V against them on the basis that the plaintiff did not name them in her charge filed with the EEOC. Since the court has already dismissed Counts III and IV, the court will consider defendants' motion only with respect to Count V of plaintiff's complaint, filed pursuant to the ADEA.

Generally, a party not named in an EEOC charge is not subject to suit in a private civil action for the same conduct complained of in the charge. *Eggleston v. Chicago Plumbers Local Union No. 1330,* 657 F.2d 890 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). The reason for this is ⁺hat the charge serves both to notify the charged party of the complaint, and to bring the party before the EEOC, affording an opportunity for voluntary compliance with the allegedly violated statute. The Seventh Circuit, however, has recognized an exception to this general rule. In *Eggleston,* the court held that when a party that was not named in the EEOC charge was nevertheless given adequate notice and the opportunity to participate in conciliation proceedings, the charge is sufficient to confer jurisdiction over the party. *Id.* at 905. Further, charges with the EEOC are to be construed liberally and any party sufficiently named or alluded to in the factual statement is to be joined. *Id.* at 906. The question before this court, then, is whether or not the individual defendants, Magnusun and Underwood, received both notice of the charge and the opportunity to engage in conciliatory measures.

In paragraph 11 of her complaint, the plaintiff states that she filed a charge with the EEOC. She also stated that the individual defendants were employees of the school district when the charge was filed. It is reasonable to infer from the facts alleged that the defendants received adequate notice and opportunity to conciliate. The *Eggleston* exception therefore applies.

To support a finding that the *Eggleston* exception does not apply, the defendants would have to attest to facts showing that they did not actually receive notice of the charge or that they were not afforded the opportunity to participate in conciliatory proceedings. The defendants have not offered any such facts, either in their motion to dismiss or by affidavit. Therefore the court denies the defendants' motion to dismiss on the basis that they were not named in the EEOC charge, until such time as the defendants offer affidavits or other proof that they in fact had no notice of such charge against them, or were not given any opportunity to participate in conciliatory proceedings.

## H. Due Process of Law

In her complaint, the plaintiff alleges that the Board did not afford her notice and opportunity to be heard prior to her forced resignation, and that it deprived her of liberty and property without due process of law. The defendants contend that only governmental employees who are actually dismissed are entitled to due process, and that since the plaintiff resigned she in fact had no due process rights. In other words, the defendants say that the forced deprivation and not the voluntary relinquishment of liberty and property triggers due process rights. The plaintiff contends that she did not voluntarily relinquish her job, but that the Board "constructively discharged" her by voting for her resignation, asking for her resignation, and subsequently taking away all of her regular teaching duties. The question for the court is whether or not the plaintiff was entitled to any type of notice from, or any opportunity to be heard by, the Board. The answer would be "yes" if the plaintiff had any liberty or property interest at stake.

Illinois has a statute that sets forth the procedures which a board of education must follow when it seeks to remove a tenured teacher. *See* Ill.Rev.Stat. ch. 122, ¶ 24–12. It sets forth two alternative procedures that a board must follow: one to be used when the board honorably discharges a teacher, and one to be used when the board terminates a teacher for any other reason. If the plaintiff was entitled to notice and opportunity to be heard, they would be due under the second alternative. The statute states in relevant part, "If a dismissal or *removal is sought* for any other reason or cause, including those under Section 10–22.4, the board must first approve a motion containing specific charges by a majority vote of all its members. Written notice of such charges shall be served upon the teacher within 5 days of the adoption of the motion.... No hearing upon the charges is required unless the

teacher within 10 days after receiving notice requests in writing of the board that a hearing be scheduled." Ill.Rev.Stat. ch. 122, § 24–12 (1985) (emphasis added).

██ The question is whether the plaintiff had any property interest which entitled her to due process. The Supreme Court has held that property interests are interests secured by "existing rules or understandings." *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). If there are rules or mutually explicit understandings that support a claim of entitlement to a benefit, then a person's interest in that benefit is a "property" interest for due process purposes. *Id.* at 601, 92 S.Ct. at 2699. The above cited statute is a mutually explicit understanding within the meaning of *Sinderman*. The plaintiff therefore had a property interest in the procedure outlined in the statute.

██ The next question is whether the Board's actions triggered the plaintiff's due process rights in this procedure. Had the Board outright dismissed the plaintiff, clearly she would have been entitled to the notice and opportunity to be heard provided in the statute. What is less clear is whether voting for a teacher's resignation, requesting her resignation, and then taking away her regular teaching duties constitutes "seeking her removal" within the meaning of the statute. This court believes it does. While the Board itself may not have removed the plaintiff, it took steps toward removing her or making the plaintiff remove herself. Once the Board took action seeking the plaintiff's removal, her property interest in the statutory procedure required the Board to give her notice and opportunity be heard.

The statute supports this interpretation. The statute is part of the Illinois Teacher Tenure Act, and its purpose is to afford tenured teachers procedural safeguards when their livelihood or tenured status is threatened and to avoid insecurity of employment based on political, partisan, or capricious considerations. *McNely v. Board of Education of Community Unit School Dist. No. 7*, 9 Ill.2d 143, 137 N.E.2d

63 (1956). The Illinois Appellate Court provides further support for this court's interpretation of the statute. In *Craddock v. Board of Education of Annawan Community Unit School District No. 226*, 76 Ill.App.3d 43, 29 Ill.Dec. 376, 391 N.E.2d 1059, *aff'd.* 81 Ill.2d 28, 39 Ill.Dec. 815, 405 N.E.2d 794 (1979), the plaintiff was a tenured teacher whom the board suspended without pay before giving him notice and opportunity to be heard. Discussing the procedural requirements of paragraph 24–12, the court said,

"It would be irresponsible and violative of the underlying purpose of the Tenure Act to allow a school board or administrator, for political, partisan or capricious reasons, to harass a teacher into quitting through imposition of repeated payless suspensions...." *Id.* 29 Ill.Dec. at 378, 391 N.E.2d at 1061.

The court therefore holds that the plaintiff was entitled to due process and notice and opportunity to be heard before the Board could take steps toward her removal from employment.

## I. Availability of Section 1983 for Employment Discrimination

██ Lastly, the defendants seek to dismiss Counts I and II on the ground that the plaintiff's exclusive remedy for claims of employment discrimination based on sex and age are Title VII of the Civil Rights Act of 1964 and the ADEA.

The Seventh Circuit has previously held that a plaintiff who alleges facts violative of Title VII may sue under section 1983 if those facts also sugggest a deprivation of constitutional rights. *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299 (7th Cir.1985). The plaintiff in the instant case has alleged deprivations of liberty and property without due process of law, in violation of the fourteenth amendment. Hence, plaintiff is not limited to Title VII and the ADEA, but may also bring her complaint under section 1983. The court denies defendants' motion to dismiss Counts I and II.

## CONCLUSION

The court finds that it lacks subject matter jurisdiction over the plaintiff's Title VII claim, and that the plaintiff's complaint fails to state a cause of action under the FLSA. The court therefore dismisses Counts III and IV of the plaintiff's complaint. The court further finds that the defendants are immune from liability for punitive damages, and therefore dismisses the plaintiff's request for punitive damages.