Alan R. KUBANY, etc., et al., Plaintiffs,

v.

The SCHOOL BOARD OF PINELLAS COUNTY, et al., Defendants.

No. 92–1970–CIV–T–17A.

United States District Court, M.D. Florida, Tampa Division.

Nov. 20, 1993.

Michael Leo Kinney, Kinney, Fernandez & Boire, P.A., Tampa, FL, Joseph F. McDermott, Law Office of Joseph F. McDermott, St. Petersburg Beach, FL, for plaintiffs.

William A. Kebler, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, FL, Bruce P. Taylor, Pinellas County School Bd., Largo, FL, for Pinellas County School Bd.

William A. Kebler, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Robert George Walker, Jr., Law Office of Robert G. Walker, Jr., Clearwater, FL, for J. Howard Hinesley, Jr., Nancy S. Zambito, Ed Evans.

William A. Kebler, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, FL, for John Sanguinett, Corinne Freeman, Barbara J. Crockett, Susan Latvala, Linda S. Lerner, Andrea M. Thacker.

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' three Motions for Summary Judgment, filed on September 10, 1993, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 3.01 of the Rules of the United States District Court for the Middle District of Florida. Subsequently, Plaintiff's Response to said motions was properly filed with this Court.

### FACTS

Plaintiff is a student at Clearwater High School, which is governed by the Pinellas County School Board. On October 9, 1992, Plaintiff and other students consumed beer before attending a high school football game. Before attending the game, the group ate at a local Wendy's. As the group was leaving, one of the students urinated in Wendy's parking lot. After arriving at the game, Plaintiff and another member of the group were approached by two police officers, who asked if either of them had relieved himself in the Wendy's parking lot. In response, the other student admitted that he had done so and further admitted that he had been drinking alcohol. That student was then arrested. Subsequently, the group was approached by Defendant Ed Evans, Principal of Clearwater High School, who was also attending the game. Defendant Evans asked Plaintiff if he had been drinking alcohol and Plaintiff responded that he had in fact done so. Defendant Evans ordered Plaintiff to report to his office on the following Monday morning.

Plaintiff appeared in Defendant's office on Monday October 12, 1992, where Plaintiff claims to have admitted to consuming one beer prior to attending the football game. The Principal's office then placed two phone calls to Plaintiff's home, but the calls were not answered. Defendant Evans then suspended Plaintiff from attending school for five days for violating section 2(a) of the School Board's Code of Student Conduct, entitled "Illegal Drugs." Plaintiff's suspension was reduced to three days provided that his parents guaranteed to school officials that Plaintiff would be enrolled in an approved drug or alcohol treatment program and then submit evidence of successful completion of the treatment program. Although Plaintiff has not enrolled in any alcohol or drug treatment program, he served the reduced three day suspension and then returned to school.

Pursuant to the procedure set forth in the Code of Student Conduct, Plaintiff and his parents (the Kubanys) appealed the October 12 suspension to Defendant Evans, who denied the appeal on October 13, 1992, by letter. They then timely appealed to the Director of School Operations, Defendant Nancy Zambito, who denied their appeal. Next, the Kubanys filed a timely appeal with the School Superintendent, Defendant Howard Hinesley. This appeal was denied by Hinesley's deputy, Cecile Boris, acting for him, on December 7, 1992. Plaintiff, acting through counsel, then contacted Defendant Hinesley by letter, requesting that the Pinellas County School Board hear the appeal. Plaintiff claims that neither he nor his attorney received notice scheduling the appeal before the School Board. Plaintiff was later informed, however, of the School Board's unanimous decision to deny the appeal at a meeting on January 13, 1993, despite the failure of the Kubanys or counsel to appear.

### PROCEDURAL FACTS

Plaintiff then filed this action under 42 U.S.C. § 1983 seeking an injunction, declaratory relief and damages in a class action suit brought on behalf of the approximately 96,-100 students who are enrolled in the public schools of Pinellas County and who are, therefore, subject to the provisions of the School Board's Code of Student Conduct. Plaintiff's First Amended Complaint contained nine Counts, five of which were dismissed by this Court by Order of April 13, 1993. The remaining Counts are summarized as follows:

1. *Count One.* Plaintiff was denied due process in his suspension because there was no evidence that Plaintiff was under the influence of alcohol.

2. *Count Two.* Plaintiff was denied equal protection because other students who had been drinking prior to attending

school activities had not been suspended under the Code, even though school officials knew that they had been drinking alcohol.

3. *Count Three.* The appeal procedure set forth in the Code is fundamentally flawed so as to prevent Plaintiff from obtaining a meaningful appeal. A provision of the Code states that the School Board and Administration shall support the disciplinary decisions of the principal. Plaintiff contends that this provision requires the School Board and Administration to approve all decisions by Principals, whether right or wrong.

4. *Count Four.* School Board personnel involved in the disciplinary process have received inadequate training regarding matters of due process.

Since Plaintiff included the School Board as a Defendant in this action, all claims against the individual Defendants in their official capacity were stricken by this Court as redundant in the previously noted Order of April 13, 1993. Therefore, the remaining four Counts apply to the individual Defendants in their personal capacity only.

### ANALYSIS

#### A. *STANDARD OF REVIEW.*

Federal Rule of Civil Procedure 56(c) provides that a trial judge shall grant summary judgement only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgement should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983). When a properly supported motion for summary judgment is made, the non-moving party must set forth specific facts indicating the existence of a genuine issue for trial. *Anderson,* 447 U.S. at 250, 106 S.Ct. at 2511. Accordingly, the non-moving party must go beyond the pleadings and offer specific facts through affidavits, depositions, answers to interrogatories, or admissions on file which show there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

#### B. *QUALIFIED IMMUNITY.*

■ In an action filed under 42 U.S.C. § 1983, in order to hold a government official liable in a personal capacity, the Plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1949). Officials charged in a personal capacity under § 1983 may assert the affirmative defense of qualified immunity. *See, e.g., Wood v. Strickland,* 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–101, 43 L.Ed.2d 214 (1975); *Harlow v. Fitzgerald,* 457 U.S. 800, 814–820, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982). As an affirmative defense, qualified immunity must be pleaded by a government official. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

■ In *Wood v. Strickland, supra,* the Supreme Court crafted the standard by which a government official's claimed defense of qualified immunity should be tested. The court determined that the defense included both an "objective" and "subjective" element. 420 U.S. at 321, 95 S.Ct. at 1000. The subjective aspect is merely a test of good faith, requiring only that the official act sincerely, and with a belief that his acts are just. *Id.* The objective element presumes the official possesses knowledge of and respect for fundamental constitutional rights. *Id.* at 322, 95 S.Ct. at 1000. Synthesizing these elements, the Court summarized the standard by which school officials should be judged:

> Therefore, in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause

a deprivation of constitutional rights or other injury to the student. This is not to say that school board members are charged with predicting the future course of constitutional law. A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith.

*Id.* at 322, 95 S.Ct. at 1001. Although the Court in *Wood* expressly limited its holding to cases involving school board members in the context of school discipline, subsequent Supreme Court decisions cited to *Wood* as a general statement of the standard applicable to qualified immunity. *See, e.g., Harlow v. Fitzgerald,* 457 U.S. at 815–816, 102 S.Ct. at 2736–37; *Procunier v. Navarette,* 434 U.S. 555, 562–563, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978). The objective and subjective aspects of the *Wood* standard can be merged into the following statement: The defense of qualified immunity is not available if the Plaintiff can show that the acts of a government official performing a discretionary function violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983).

After the Supreme Court formulated the standard for qualified immunity, problems arose concerning the subjective element of the test because an official's subjective good faith has commonly been considered a question of fact, which many courts have seen as requiring a jury for determination. *Harlow,* 457 U.S. at 816 n. 27, 102 S.Ct. at 2737. To resolve this issue, in *Harlow,* the Court explained:

On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he

fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.* at 818–819, 102 S.Ct. at 2738. According to the Court's formulation in *Harlow,* if the law which forms the basis of a plaintiff's complaint is not well settled, a government official cannot, as a matter of law, violate the subjective element set forth in *Wood.*

■ Application of the standard articulated above requires this Court to conduct its review through the eyes of an objective reasonable school official, asking whether such an official could have believed his or her actions to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred? *Nicholson v. Georgia Dep't of Human Resources,* 918 F.2d 145, 147 (11th Cir.1990). Unless the state of the law was so well established that a reasonable official should have been on notice that his or her challenged conduct was unlawful, that official is entitled to qualified immunity. *Id.* This Circuit has clearly stated that the plaintiff bears the burden of showing that the defendant violated clearly established constitutional rights. *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1963); *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). To satisfy this burden, the plaintiff must show that sufficient case law exists to establish that "the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances and possessing the same knowledge as the defendant. If no such case law exists, then the defendant is entitled to qualified immunity." *Nicholson,* 918 F.2d at 147. Only if the Plaintiff carries this burden is he entitled to a judgment in his favor. *Busby v. City of Orlando,* 931 F.2d 764 (11th Cir.1991).

1. Counts One and Three.

■ In Count One, Plaintiff claims that he was denied due process because he was suspended without any evidence of his being "under the influence" at a football game. In Count Three, Plaintiff claims that he was denied a meaningful appeal because the foreword to the Code of Student Conduct re-

quires the School Board and Administration to support the disciplinary decisions of the Principal. In making his decision to suspend Plaintiff, Defendant Evans was required to render an interpretation of section 2(a) of the Pinellas County School Board's Code of Student Conduct. Similarly, in upholding Defendant Evans' suspension, the remaining individual Defendants were required to interpret the same regulation, which provides as follows:

> 2. *ILLEGAL DRUGS:* ITEMS REPRESENTED TO BE ILLEGAL DRUGS, DRUGS FOR WHICH THE STUDENT DOES NOT HAVE A VALID PRESCRIPTION, ALCOHOL OR INTOXICATING BEVERAGES, OR OTHER ILLEGAL OR HARMFUL SUBSTANCES. THE USE OF ILLICIT DRUGS AND THE UNLAWFUL POSSESSION AND USE OF ALCOHOL IS WRONG AND HARMFUL.

> a. BEING UNDER THE INFLUENCE OF, THE USE OF, OR POSSESSION OF ILLEGAL DRUGS, MATERIAL, SUBSTANCES, DRUG PARAPHERNALIA, OR ALCOHOLIC BEVERAGES ON SCHOOL PROPERTY OR AT SCHOOL FUNCTIONS, INCLUDING, BUT NOT LIMITED TO, THE BRINGING OF SUCH ITEMS TO SCHOOL FOR ANOTHER PERSON OR ONE'S PERSONAL EFFECTS, OR PLACING SUCH ITEMS IN A LOCKER, DESK, OR OTHER HIDING PLACE, SHALL BE CONSIDERED PROHIBITED CONDUCT.

Plaintiff asserts that being "under the influence of" alcohol at a school function requires more than mere ingestion of a single alcoholic beverage prior to attending that function, however, Plaintiff has provided no case law to support this assertion. Whether the mere consumption of one alcoholic beverage prior to attending a school function is sufficient to render a student "under the influence" of alcohol is clearly not a well settled area of the law. Accordingly, pursuant to the analysis enunciated in *Harlow,* this Court finds, as a matter of law, that the individual Defendants could not have violated the subjective element of the *Wood* test.

As to the objective element of *Wood,* this Court finds no evidence in the record to indicate that the individual Defendants named in Count One and/or Count Three are not entitled to the defense of qualified immunity. The record shows that the individual Defendants, in the act of suspending Plaintiff or upholding said suspension, interpreted section 2(a) of the Code of Student Conduct to include the mere ingestion of alcohol within the meaning of the phrase "under the influence." This Court finds this interpretation reasonable, especially considering that the only decision found by the Court which directly addressed this issue upheld a school board's interpretation of "under the influence" as including the mere ingestion of alcohol. *Rorhbaugh v. Elida Board of Education,* 63 Ohio App.3d 685, 688, 579 N.E.2d 782, 784 (1990). The court in *Rohrbaugh* reasoned that a contrary interpretation of the phrase would restrict school officials from exercising authority until a student either exhibited impaired conduct that could be dangerous to himself or to other students. *Id.* Accordingly, with regards to Counts One and Three, since the plaintiff has provided no evidence to show that any of the individual Defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow, supra,* the defense of qualified immunity bars Plaintiff's claims against the individual Defendants concerning Counts One and Three.

### 2. Count Two.

■ Count Two claims that Defendant Evans violated Plaintiff's equal protection rights by selectively enforcing section 2(a) of the Code. Plaintiff supports this Count through the deposition of Margaret Gambill, a School Board employee. Ms. Gambill stated that she had an encounter with a student at a school function who she knew was intoxicated and, even though Defendant Evans was advised of the student's condition, the student was not suspended. Defendant Evans' affidavit states that Evans has in all circumstances where he has observed a student consuming an alcoholic beverage or received a direct admission of alcohol consumption from a student, suspended that student in accordance with section 2(a) of the Code of

Student Conduct. Ms. Gambill's deposition, in comparison, indicates that on one particular occasion, Defendant Evans did not suspend a student when he had second hand knowledge of the student's alleged violation of section 2(a). Plaintiff has provided no other evidence to show that Defendant Evans is selectively enforcing Code section 2(a).

Defendant Evans, as a high school principal, must exercise his discretion in implementing the Code of Student Conduct so as to maintain discipline at all school functions. As discussed by the Supreme Court in *Wood v. Strickland, supra*, school officials are continually required to determine if violations of school regulations have occurred and, if so, the appropriate sanctions for those violations. 420 U.S. at 319, 95 S.Ct. at 999. Considering the discretion required by these activities, denying school officials a certain measure of immunity in carrying out these duties would hinder, rather than foster, principled decision-making. *Id.* Therefore, because Plaintiff has failed to show that Defendant Evans acted with such an impermissible motivation or with such disregard of Plaintiffs constitutional rights that his action cannot reasonably be characterized as being in good faith, this Court finds the defense of qualified immunity shields Defendant Evans from personal liability in Count Two.

3. Count Four.

■ Plaintiff's Count Four alleges a failure to train School Board personnel as to due process requirements, which caused Plaintiff to receive a meaningless appeal. As with the other individual Defendants named above in Counts alleging liability in a personal capacity, Defendant Hinesley has raised the defense of qualified immunity to this claim. As a result, Plaintiff bears the burden of showing that Defendant Hinesley violated clearly established law or acted maliciously in failing to provide adequate training. *See Wood,* 420 U.S. at 322, 95 S.Ct. at 1000. However, Plaintiff has failed to make any showing, either in affidavit or otherwise, to overcome Defendant Hinesley's claim of qualified defense to Count Four. Therefore, this Court finds that qualified immunity shields Defendant Hinesley from personal liability under Count Four.

### C. CLAIMS AGAINST DEFENDANT SCHOOL BOARD.

Since qualified immunity has shielded all individually named defendants from liability under Counts One through Four, this analysis will now examine the remaining claims against the School Board under Counts Three and Four. The suit against the School Board constitutes an official-capacity action. As the Supreme Court explained in *Kentucky v. Graham,* a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation; thus, in an official-capacity suit, the entity's "policy or custom" must have played a part in the violation of federal law." 473 U.S. at 166, 105 S.Ct. at 3105 (citations omitted).

1. Count Three.

The following verbiage in the foreword to the Code of Student Conduct forms the basis of Plaintiff's claim under this Count:

> The School Board and Administration shall not condone disruptive behavior and shall support the principal in any disciplinary actions taken to ensure an excellent educational environment for all students. All actions shall conform to Florida Statutes, State Board of Education Administrative Rules, and School Board Policy.

Plaintiff claims that this verbiage indicates that the appeal process is fundamentally flawed since the passage requires School Board members and Administrators to "support" the Principal's disciplinary actions, whether right or wrong, thereby depriving Plaintiff of due process. Specifically, Plaintiff asserts that the School Board's affirmation of his suspension was the direct and proximate result of blindly sustaining the preliminary determination of Defendant Evans. As relief, Plaintiff seeks both damages and a declaratory judgment against the Pinellas County School Board to establish that the appeal process violates due process.

The School Board argues that it is exempt from liability on this Count based primarily upon the following admonition by the Supreme Court in *Wood v. Strickland:*

It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations.

420 U.S. at 326, 95 S.Ct. at 1003. The School Board maintains that the relief requested by Plaintiff would involve this Court substituting its interpretation of School Board regulations for the construction given the regulations by the School Board.

In his Response to Defendants' Motions for Summary Judgment, Plaintiff provided the affidavit of Cecile Boris, who acted for Hinesley in affirming the decision to suspend Plaintiff, who indicated that his decision to support the Principal's decision in this matter was based on his support of the Code of Student Conduct and School Board policy. Plaintiff claims that Boris' statement indicates an improper basis for upholding the suspension. Plaintiff further maintains that neither he, nor his counsel were provided with notice of the School Board meeting in which Plaintiff's suspension was upheld.

█ This Court finds that the plain language of the foreword to the Code could reasonably provide the basis for a School Board "policy" to uphold disciplinary decisions by school Principal regardless of the merits of the Principal's decision. This Court further finds that this issue does not constitute an instance where the court would be supplanting its interpretation of regulations over that of the School Board, as discussed in *Wood, supra.* Viewing the evidence in the light most favorable to Plaintiff, this Court finds that Defendant School Board has failed to show the absence of a genuine issue as to any material fact as to Count Three. On the issue of damages, as Defendant School Board points out, punitive damages are not available under § 1983 from a governmental entity. *Kentucky v. Graham,* 473 U.S. at 167 n. 13, 105 S.Ct. at 3106; *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Therefore, Plaintiff's damages under this Count will be limited to compensatory damages.

2. Count Four.

█ Count Four seeks to impose liability upon the School Board on the basis that it failed to provide adequate training in the area of due process. In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1988), the Supreme Court found that a municipality could be found liable under § 1983 for failing to adequately train its employees. *Id.* at 388, 109 S.Ct. at 1204. However, the Court limited the scope of a municipality's liability under a failure to train claim as follows: "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389, 109 S.Ct. at 1205. In the instant case, Plaintiff has neither pleaded, nor offered any evidence to show that the School Board at any time exhibited a "deliberate indifference" to the due process rights of the students of Pinellas County. Accordingly, as Plaintiff has provided no evidence beyond mere allegations against the School Board concerning this issue, the School Board is entitled to judgment as a matter of law on this Count.

Accordingly, it is,

**ORDERED** that Defendants, Ed Evans, Nancy Zambito, and J. Howard Hinesley's Motion for Summary Judgment **granted.**

**ORDERED** that Defendants, Lee Benjamin, Corinne Freeman, Barbara Crockett, Susan Latvala, Linda S. Lerner, John Sanguinett, and Andrea Thacker's Motion for Summary Judgment be **granted.**

**ORDERED** that Defendant, School Board of Pinellas County's Motion for Summary Judgment be **granted** in part and **denied** in part. Summary judgment is **granted** to Defendant School Board as to Count Four, and **denied** as to Count Three. As to Count Three, damages shall be limited to compensatory damages only, and the Clerk of the

Court shall enter the appropriate judgments in conformance with this order.

DONE AND ORDERED.