Beverly D. GARRETT, Plaintiff,

v.

CLARKE COUNTY BOARD
OF EDUCATION, et al.,
Defendants.

Civ. A. No. 93–0633–BH–S.

United States District Court,
S.D. Alabama,
Southern Division.

June 24, 1994.

Henry Brewster, Henry H. Caddell, Mobile, AL, for Beverly D. Garrett.

Brock B. Gordon, Mobile, AL, Bruce N. Wilson, Grove Hill, AL, for Clarke County Board of Educ., Melvin W. Joiner, as immediate past superintendent of the Clarke County Board of Education and Gerald Stephens, Superintendent, Clarke County Board of Education.

## ORDER

HAND, Senior District Judge.

This action arises from plaintiff Beverly Deas Garrett's not being hired for three positions with defendant Clarke County Board of Education: the principalship at Jackson Middle School ("JMS"), the principalship at Coffeeville Elementary School ("CES"), and the assistant principalship at Gillmore Elementary School ("GES").

The plaintiff, a white female, filed her complaint under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991. She alleges the defendants discriminated against her on the basis of her race with respect to all three positions, and on the basis of her sex with respect to the position at CES. In addition to the Clarke County Board of Education ("Board"), the defendants include Melvin Joiner, the immediate past Board superintendent, and Gerald Stephens, the current superintendent, ("Superintendents") whom Garrett has sued in their official and individual capacities.

The plaintiff prays that the court enjoin the defendants, their agents, employees, successors, and attorneys, and those acting with them, from engaging in discriminatory hiring practices. She also asks that the court specifically enjoin the defendants from discriminating against her on the basis of her race and sex. Moreover, she seeks an award of front and back pay she would have earned absent the alleged discrimination; $500,000 for pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and punitive damages; costs and expenses, including attorney's fees; and other relief which equity and justice requires.

This action is before the court on a motion for partial summary judgment by the plaintiff on her injunctive-relief claim and her claims regarding the GES position; she has not moved for summary judgment on her other claims. Also before the court is a summary-judgment motion from the defendants covering all the plaintiff's claims.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Based on the briefs and supporting evidentiary material submitted by the parties, the court makes the following findings of fact and conclusions of law.

## I. Findings of Fact

1. The plaintiff is a white female resident of Jackson, Alabama.

2. Joiner was Board superintendent from March 1983 to January 1993. (Depo. of Melvin Joiner, 6–7.) Stephens was elected superintendent in June 1992 and took office in 1993. (Depo. of Gerald Stephens, 7–8.)

3. The Board employs Garrett as a teacher at JMS. (Depo. of Beverly Garrett, 8–9.) She began working for the Board in 1971 as a teacher at Jackson High School. (Id. at 7–8.) After teaching at Jackson High School for three years, she transferred in 1974 to Harper Middle School, (id.), which became Jackson Middle School when the institution moved to the old Jackson High School campus. Garrett has taught at Harper and Jackson middle schools since 1974. (Id. at 8–9; Joiner depo. at 32–35.)

4. In July 1992, Constance Bowan, then principal of Wilson Hall Middle School ("WHMS") in Clarke County, passed away. (Joiner depo. at 75; Depo. of Wanda Roberts, GES principal, 13.) Joiner felt the position should be filled on an interim basis, since there was inadequate time before the beginning of the new school year to complete the normal process of filling a principalship on a permanent basis. (Joiner depo. at 75–77, 103–105.)

5. Marie Hutto, an administrator in the central office of the school district since 1985, claims she heard Joiner say the public "would not stand for a white to be in a traditionally black school or a black to be in a traditionally white school." By "traditionally black school," she meant JMS, WHMS, and CES, and by "traditionally white school," she meant others in the Clarke County system. (Id. at 24–26.) Joiner recalls making no such statement but does recall discussing with many people the need to keep a fair racial balance, though not in any specific place. (Joiner depo. at 48–52.)

6. Joiner discussed the interim principalship position at WHMS with Cynthia Boykin, a white female who was then assistant principal at GES, and Patricia Pugh, a black female who was then principal at CES. (Id. at 103–09; Depo. of Cynthia Boykin, 5.) Joiner told Boykin he wanted to recommend she be principal at WHMS. (Joiner depo. at 103–04; Boykin depo. at 20–21.)

7. Boykin had been appointed GES assistant principal in 1991 by Roberts. (Boykin depo. at 16–19; Roberts depo. at 11.)

8. It was Joiner's normal practice to let the principal of a school select an assistant principal when a vacancy occurred. (Roberts depo. at 20; Joiner depo. at 105.)

9. Boykin told Roberts that Boykin might be appointed to the interim principalship at WHMS. (Roberts depo. at 13–14.)

10. When Roberts contacted Joiner, they noted that if Boykin became interim principal at WHMS, the assistant principalship at GES would have to be filled. (Id. at 13–14.) Joiner told Roberts to proceed to recruit a new assistant principal, but Roberts claims she did not do so. (Id. at 15.)

11. Garrett had contacted Roberts about being assistant principal at GES should Boykin move to WHMS. (Id. at 15–18.)

12. After Roberts talked with Joiner, Roberts contacted Garrett about the potential vacancy at GES. (Id. at 18.) Roberts did not contact any other potential candidates for the position at this time, because none of the other possible candidates had put themselves in touch with her about the potential vacancy. (Id.) However, Garrett was not the only possible candidate for a GES assistant principalship. (Id. at 22.)

13. When Joiner contacted Boykin about the WHMS interim principalship position, Boykin requested time to consider the possibility and promised to get in touch with him. (Boykin depo. at 20–21.) She later contacted Joiner to say that if he recommended her and the Board approved her, she would accept the WHMS interim principalship. (*Id.* at 21–22.)

14. Black parents and black community leaders reacted to the possibility of Boykin becoming WHMS interim principal by going to see Joiner and, on July 16, 1992, by attending a school-board meeting. (Joiner depo. at 106–07.) They asked that the Board consider Pugh for the interim principalship at WHMS. (*Id.*)

15. At a special meeting on July 30, 1992, the Board appointed Pugh, who is black, to be WHMS interim principal. (Plaintiff's Ex. 13.) The appointment of Pugh was in part a response to the blacks' visit. (Joiner depo. at 106–07.)

16. Garrett alleges that Joiner and the Board did not appoint Boykin to be interim WHMS principal because she is white, and thereby discriminated against Boykin on the basis of her race. Because Boykin did not receive the WHMS position, she did not leave her assistant principalship at GES, and Garrett did not get Boykin's job. The plaintiff alleges Joiner and the Board thereby unlawfully discriminated against her.

## II. Conclusions of Law

### A

1. The court has jurisdiction over the parties and their claims pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Garrett's § 1983 individual-capacity claims against the Superintendents are governed by different standards than those applicable to her official-capacity claims against these defendants and to her claims against the Board.

3. In *Yeldell v. Cooper Green Hospital, Inc.,* 956 F.2d 1056 (11th Cir.1992), the Eleventh Circuit carefully distinguished official-and personal-capacity liability under § 1983:

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" [*Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)] (citations omitted) (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)). In other words, a plaintiff in an action against a government official in his personal capacity can recover only against the official's personal assets. The assets of the governmental entity are not accessible. The reverse is true in an official capacity lawsuit. Furthermore, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.... In an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* 473 U.S. at 166, 105 S.Ct. at 3105 (citations omitted).

*Yeldell,* 956 F.2d at 1060. If "official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent[,]'" because a plaintiff can recover against only the entity's assets, then official-capacity suits are redundant and improper. *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *Kubany by Kubany v. School Bd. of Pinellas County,* 818 F.Supp. 1504, 1507 (M.D.Fla. 1993) (filing a § 1983 claim against school officials in their official capacities was improper, because the plaintiff had sued the school board directly). In the case *sub judice,* the plaintiff has sued the Board directly, so all of the § 1983 claims against the Superintendents in their official capacities are due to be dismissed with prejudice.

4. "Title VII actions are not appropriately brought against government officials in their personal capacities. Such suits may be brought only against individuals in their official capacity and/or the employing entity." *Yeldell,* 956 F.2d at 1060, citing *Busby,* 931 F.2d at 772; *Harvey v. Blake,* 913 F.2d 226

(5th Cir.1990). *Busby* remains good law, notwithstanding the Civil Rights Act of 1991, which amended the Civil Rights Act of 1964. The 1991 amendments to the 1964 act do not allow recovery of compensatory and punitive damages from government officials in their individual capacities. *Saville v. Houston Healthcare Authority*, 852 F.Supp. 1512, 1523 (M.D.Ala.1994), citing *Smith v. Capitol Club of Montgomery*, 850 F.Supp. 976 (M.D.Ala.1994); *Miller v. Maxwell's Intern., Inc.*, 991 F.2d 583 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994).[1] Therefore, all of the plaintiff's Title VII claims against the Superintendents in their individual capacities are due to be dismissed with prejudice.

5. Punitive damages are not available under § 1983 from a governmental entity. *Kubany v. School Bd. of Pinellas County*, 839 F.Supp. 1544, 1551 (M.D.Fla.1993) (limiting plaintiff's damages in a § 1983 action against a school board to compensatory damages), citing *Graham*, 473 U.S. at 167 n. 13, 105 S.Ct. at 3106 n. 13; *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (§ 1983 action against a municipality). *See also Rockford Principals and Sup'rs v. Board of Educ.*, 721 F.Supp. 948, 957 (N.D.Ill.1989) (citing *Newport*); *Thompson v. Board of Educ. of the City of Chicago*, 711 F.Supp. 394, 415 (N.D.Ill.1989) (citing *Newport*, 453 U.S. at 271, 101 S.Ct. at 2762); *cf. Haag v. Board of Educ.*, 655 F.Supp. 1267, 1271 (N.D.Ill.1987) (citing *Newport*) (court was unwilling to extend to a school board a statutory waiver of immunity discovered by a court in *Kolar v. Sangamon County*, 756 F.2d 564 (7th Cir. 1985)). Accordingly, the plaintiff's claims for punitive damages against the Board, and against the Superintendents in their official capacities, under § 1983 are due to be dismissed with prejudice.

6. The plaintiff's § 1981 claims against the Board, and against the Superintendents in their official capacities, merge into the § 1983 claims for racial discrimination, because "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Busby*, 931 F.2d at 771–72 n. 6, quoting *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735, 109 S.Ct. 2702, 2722, 105 L.Ed.2d 598 (1989) (§ 1981 can provide no broader remedy against a state actor than § 1983), citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir.1991). Accordingly, the plaintiff's claims for punitive damages against the Board, and against the Superintendents in their official capacities, under § 1981 are due to be dismissed with prejudice.

7. Based on *Busby* and *Jett*,[2] and the discussion of *Yeldell*, *Busby*, and *Kubany by Kubany*,[3] all of the § 1981 claims against the Superintendents in their official capacities are due to be dismissed with prejudice.

8. Title VII, as amended by the Civil Rights Act of 1991, authorizes both compensatory and punitive damages, "provided that the complaining party cannot recover under section 1981[.]" 42 U.S.C. § 1981a(a)(1). In no event, however, may the complaining party recover punitive damages from a governmental entity. 42 U.S.C. § 1981a(b)(1). Since the Board, and the Superintendents in their official capacities, are governmental entities, the plaintiff in the action *sub judice* cannot possibly recover Title VII punitive damages from them. Therefore, the plaintiff's Title VII claims for punitive damages against the Board and against the Superintendents in their official capacities are due to be dismissed with prejudice.

---

1. The *Saville* court persuasively distinguishes *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172 (S.D.N.Y.1992), a case from another circuit which reached a different result. *See Saville*, 852 F.Supp. at 1523. In addition, the *Saville* court asserted that although the Eleventh Circuit has not held there is no Title VII individual liability in the *private-employment* context, *Busby* applies equally to the private-employment context. *Id.* at 1523 n. 11.

2. *Supra* conclusions of law, ¶ 6.

3. *Supra* conclusions of law, ¶ 3.

## B

9. "[T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical[.]" ' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... traceable to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted). A plaintiff has no standing if he fails any one of these three tests.

10. First, the plaintiff has no "injury in fact" regarding the GES position, because the position she sought was never vacant. She also has no "injury in fact," because the alleged discrimination, if it occurred, was against Boykin, not the plaintiff. The allegation that Joiner and the Board rejected Boykin because she was white is one for Boykin, not Garrett, to raise. Garrett in effect is asserting Boykin's claim. This she may not do.

A plaintiff alleging discrimination has no standing to claim that he would have received a position but for discrimination against someone else. He "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), citing *Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). *See also Mosley v. Clarksville Memorial Hosp.,* 574 F.Supp. 224, 234 (M.D.Tenn.1983) (plaintiff who asserts no actual injury to himself due to discrimination has no standing to assert a violation of 42 U.S.C. § 2000e–5), citing *Senter v. General Motors Corp.,* 532 F.2d 511, 517 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). The discrimination laws do not operate like dominos lined up in a row: knocking down one domino causes the next one to fall, but discrimination against one person, however egregious the discrimination may be, is not discrimination against the next one in line.

11. Second, if the allegation of discrimination against Boykin is true, then it is a reason why Boykin did not become WHMS interim principal, but it is not a reason why Garrett did not become GES assistant principal. Garrett's misfortune is due to the fact that the position she sought was never vacant. It was never vacant because Boykin did not leave.

The alleged "injury" is Garrett's not getting the job. The "conduct complained of" is the alleged discrimination against Boykin. There is no "causal connection" between two. The injury is not "fairly traceable to the challenged action of the defendant[s]." Instead, it is the result of "the independent action of some third party [Boykin] not before the court." *Lujan,* —— U.S. at ——, 112 S.Ct. at 2136. Even if Boykin were before the court, the plaintiff would have no claim against her based on the facts alleged.

12. Third, Garrett's apparent assumption that she would have received Boykin's position had Boykin moved on is "speculative" and provides no basis for the court to conclude that her alleged "injury will be 'redressed by a favorable decision.' " *Id.*

13. Based on the foregoing, Garrett fails all three *Lujan* tests. She has no standing to assert her GES claim. *Cf. Donaghy v. City of Omaha,* 933 F.2d 1448, 1455 (8th Cir.1991) (plaintiff had no distinct and palpable injury, because he would not have been promoted had rank order been strictly followed); *Billish v. City of Chicago,* 962 F.2d 1269, 1279 (7th Cir.1992). The claim is due to be dismissed with prejudice.

14. Based on the foregoing, the court **DISMISSES** with prejudice:

a. all of the §§ 1981 and 1983 claims against the Superintendents in their official capacities,

b. all of the Title VII claims against the Superintendents in their individual capacities,

c. the §§ 1981 and 1983 claims for punitive damages against the Board and against the Superintendents in their official capacities,

d. the Title VII claims for punitive damages against the Board and against the Superintendents in their official capacities, and

e. all of the claims relating to the assistant principalship at Gillmore Elementary School.[4]

The defendants' summary-judgment motion as it relates to the dismissed claims is **MOOT.** With regard to the remaining claims, the court **DENIES** the motion.

The plaintiff's motion for partial summary judgment is **DENIED** as it relates to injunctive relief, and **MOOT** as it relates to the GES claim.

**SO ORDERED.**

---

**4.** The court recognizes that some of these categories overlap.