## Kathryn M. SMITH, Plaintiff,

v.

## CAPITOL CITY CLUB OF MONTGOMERY, et al., Defendants.

Civ. A. No. 93–T–1200–N.

United States District Court, M.D. Alabama, N.D.

April 12, 1994.

James Mendelsohn, Amelia Haines Griffith, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiff.

Bruce Johnson Downey, III, Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, for defendants.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiff Kathryn M. Smith filed this employment discrimination action against defendants Capitol City Club of Montgomery, its manager, Timothy Shepardson, and its parent corporation, Club Corporation of America. She alleges that the defendants discriminated against her in the terms and conditions of her employment and in discharging her without good cause because she became pregnant. Smith brings this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e through 2000e–17, as amended by the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a. This cause is now before the court on a motion to dismiss, filed by Shepardson, on the ground that he cannot be held individually liable under Title VII. For the reasons set forth below, this motion will be granted.

## I. BACKGROUND

In considering Shepardson's motion to dismiss, the court accepts Smith's factual allegations as true, Fed.R.Civ.P. 12(b); *Andreu v. Sapp,* 919 F.2d 637, 639 (11th Cir.1990), and construes Smith's complaint liberally in her favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Smith alleges the following sequence of events. Prior to August 1991, Shepardson, as manager of the Capitol City Club, contacted Smith and expressed an interest in hiring her as director of catering. Shepardson told Smith she would need to take a test to be formally considered for the position; Smith took this test, scored very well, and was hired. In November 1991, Smith learned that she was pregnant and informed the defendants of her news. Shepardson then subjected Smith to discriminatory terms and conditions of employment, including both singling her out for harsh treatment and mak-

ing offensive remarks about her pregnancy. Although Smith alleges that her work performance was satisfactory, Shepardson terminated her on January 7, 1992.

Smith responded by filing this lawsuit on October 1, 1993, against Shepardson and the other defendants, charging that these actions were taken because of her sex and because she was pregnant. She claims that she has suffered physical pain, a miscarriage, emotional anguish, and loss of reputation because of defendants' discriminatory employment actions. She seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## II. DISCUSSION

■ Shepardson moves to dismiss Smith's complaint against him on the ground that he cannot be held liable as an individual supervisor under the 1991 amendments to Title VII. In support of his motion, Shepardson relies on an opinion rendered by the Eleventh Circuit Court of Appeals prior to the 1991 amendments: *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir.1991) (per curiam). There, the court wrote that, "Individual capacity suits under Title VII are ... inappropriate." *Id.* at 772. The court explained that, "The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act," and "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Id.* (internal citations omitted) (emphasis in original).[1] The import of *Busby* is that, even though Congress defined "employer" to in-

clude "any agent," 42 U.S.C.A. § 2000(e)(b), this provision does not impose individual liability but only holds the employer accountable for the acts of its individual agents.[2]

■ Smith argues that the rule in *Busby* is no longer good law because of the passage of the 1991 amendments.[3] Specifically, she points to the provision of the 1991 amendments that allows a Title VII plaintiff who can prove intentional discrimination to recover compensatory and punitive damages: 42 U.S.C.A. § 1981a(a)(1). Prior to the effective date of this provision, a plaintiff could seek only such relief as reinstatement, backpay, and other equitable relief; according to Smith, the employer, and not the individual employee, was then in a better position to provide such relief and individual liability was not appropriate. Smith contends that, because an individual employee can satisfy an award of monetary damages and because she seeks compensatory and punitive damages, *Busby* should not apply to her claim against Shepardson under Title VII as amended by the Civil Rights Act of 1991. Smith relies on the case of *Wilson v. Gillis Advertising Co.*, 1993 WL 503117 (N.D.Ala.1993), in which the court, for the reasons urged by Smith, held that *Busby* did not survive the 1991 amendments and allowed the plaintiff to amend her complaint to seek individual-capacity relief.

The *Wilson* court adopted the reasoning of the court in *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172 (S.D.N.Y.1992). In *Bridges*, the court wrote that, "Since [compensatory and punitive] damages are of a type that an individual can be expected to pay, there appears little reason" to preclude Title VII suits against individuals. *Id.* at

---

1. A split of opinion exists among circuit courts of appeals on the question of whether an individual can be held liable under Title VII as it existed prior to the 1991 amendments. *See Bertoncini v. Schrimpf*, 712 F.Supp. 1336, 1339–40 (N.D.Ill. 1989) (collecting cases). *Busby* aligned the Eleventh Circuit with those courts holding that no individual liability exists. In adopting this rule, the *Busby* court specifically relied on the Fifth Circuit's decision in *Harvey v. Blake*, 913 F.2d 226, 227–28 (5th Cir.1990), which had reached the same conclusion.

2. An employer can be held liable under Title VII for the discriminatory actions of its employees

under either of two theories: agency or respondeat superior. *See Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (11th Cir.1987). Under either theory, however, it is the employer who is held liable under Title VII, not the offending employee. The offending employee, of course, may be held liable under causes of action other than Title VII, such as state-law tort claims.

3. Smith essentially concedes that *Busby* would preclude an individual-capacity suit under Title VII brought before the effective date of the 1991 amendments.

1180. The *Wilson* court predicted that the Eleventh Circuit would adopt the reasoning of *Bridges* when it considered the issue. 1993 WL at 503117, *2. The court in *Bridges*, however, was on a significantly different footing from that of the *Wilson* court because it assumed that, in the Second Circuit, a plaintiff could seek relief against an individual under Title VII; thus, the availability of compensatory and punitive damages merely provided an additional basis for the *Bridges* court to conclude that Title VII authorized individual liability. *Bridges*, 800 F.Supp. at 1180. The court in *Wilson*, by contrast, relies on the availability of compensatory and punitive damages as the sole basis for concluding that *Busby*—the law in the Eleventh Circuit at this time—is no longer valid.

█ This court disagrees with the holding in *Wilson* and believes that the Eleventh Circuit, when it is faced with the issue, will hold that *Busby* remains good law, notwithstanding the availability of damages that an individual defendant can provide.[4] In reaching its conclusion, the court is guided by the reasoning of the Ninth Circuit Court of Appeals—the first and only circuit squarely to address Smith's argument—in *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1049 (1994). Prior to the amendment of Title VII by the Civil Rights Act of 1991, the Ninth Circuit held, as did the Eleventh Circuit in *Busby*, that individuals could not be held liable under Title VII. Thus, the decision in *Miller*—that no individual liability

exists under Title VII even after the effective date of the 1991 amendments—is a more logically persuasive one for this court than the *Bridges* decision relied on in *Wilson*.

The *Miller* court found two bases from which to conclude that Congress did not intend, either before or after the 1991 amendments, to impose individual liability on employees. First, the *Miller* court relied on the fact that Title VII has always limited liability to employers with 15 or more employees. 42 U.S.C.A. § 2000e(b). The court concluded from this limitation that "Congress did not want to burden small entities with the costs associated with litigating discrimination claims." *Id.* at 587. "If Congress decided to protect small entities with limited resources from liability," the court continued, "it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Id.* This court similarly finds no basis to conclude from the statutory scheme that Congress intended to exempt small employers but impose liability on individual employees.[5] *Cf. Rogero v. Noone*, 704 F.2d 518, 520 (11th Cir.1983) ("because Noone had fewer than fifteen employees, he was 'not an employer within the definition of 42 U.S.C.A. § 2000e, either individually or as Tax Collector, and thus, the plaintiff's Title VII action against Defendant Noone [could not] be maintained'").

Second, the *Miller* court also addressed the availability of compensatory and punitive damages under the 1991 amendments. The amendments placed caps on the availability of damages and based these caps on the size

4. The Eleventh Circuit reaffirmed the rule in *Busby* in another case addressing Title VII prior to the 1991 amendments. In *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056 (11th Cir.1992), the court wrote that "[Title VII] suits may be brought only against individuals in their official capacity and/or the employing entity." *Id.* at 1060.

Both *Busby* and *Yeldell* addressed the question of individual liability in the *public* employment context. The *Wilson* court suggested that the rule in *Busby* does not necessarily preclude individual liability in the *private* employment context. 1993 WL at 503117, *1. While the Eleventh Circuit has not specifically held that there is no individual liability under Title VII in the private employment context, this court believes that *Busby*'s holding that there is no individual liability

under Title VII applies equally in the private employment context.

5. One court, in declining to adopt the analysis of the *Miller* court, has concluded that the exemption for small employers was not intended to exempt all "small entities," but rather "small family-run businesses" in order to protect them "from discriminatory hiring claims based on their preference for hiring friends and relatives." *Lamirande v. Resolution Trust Corp.*, 834 F.Supp. 526 (D.N.H.1993). Congress, however, excluded a category of employers on the basis of their size—"small entities"—and not on the basis of whether a business was family-run. This court agrees with the *Miller* court that Congress intended to exempt small entities, and by logical extension, individual employees.

of the employer's workforce. 42 U.S.C.A. § 1981a(b)(3)(A–D).[6] Again, Congress provided that there would be no liability for an employer with fewer than 15 employees. This court agrees with the *Miller* court's conclusion that, "if Congress had envisioned individual liability under Title VII for compensatory and punitive damages, it would have included *individuals* in this litany of limitations and would have discontinued the exemption for small employers." *Miller,* 991 F.2d at 588 n.2 (emphasis in original). Moreover, the law in the Eleventh Circuit has been settled that there is no individual liability under Title VII; the fact that Congress made available compensatory and punitive damages—without changing the definition of employer and without discontinuing the exemption for small employers—does not provide this court with a reason to believe that Title VII now imposes individual liability. A number of district courts considering individual liability under Title VII have reached the same conclusion. *See Lowry v. Clark,* 843 F.Supp. 228, 231 (E.D.Ky.1994) ("the placing of [ ] damage limitations upon employers based on the number of employees indicates that Congress did not intend to permit recoveries against individual employees for such damages"); *Stafford v. State,* 835 F.Supp. 1136, 1149 (W.D.Mo.1993) ("A Title VII claim may not be brought against a supervisory employee in his/her individual capacity"); *see also Johnson v. Northern Indiana Public Service Co.,* 844 F.Supp. 466, 469 (N.D.Ind. 1994); *Henry v. E.G. & G. Missouri Metals Shaping Co., Inc.,* 837 F.Supp. 312, 314 (E.D.Mo.1993); *Pelech v. Klaff–Joss, LP,* 828 F.Supp. 525, 529 (N.D.Ill.1993).

In addition, there is a simple practical consideration that counsels against individual liability: Congress could not have intended the odd circumstances that would result from a scheme of individual liability. First, such a scheme would, presumably, base the amount of damages against an offending employee on the size of the employer for whom he or she works. While gearing the amount of damages to the size of the employer makes sense if the employer is the party to be held liable, it makes no sense if it is the individual who is to be held liable. Under such a scheme, a plaintiff could recover $50,000 from an offending supervisor at a company with 15 to 100 employees, but $300,000 from an offending supervisor at a very large corporation—even if both supervisors earn the same salary and engaged in identical discriminatory conduct. Second, the damage caps envision a unity of liability: "The sum of the amount of ... damages ... shall not exceed [a certain sum], ... in the case of *a respondent* " of a certain size. 42 U.S.C.A. § 1981a(b)(3) (emphasis added). If both the offending employee and the employer were to be liable for monetary damages, Congress would have provided some guidance as to how damages should be apportioned, or, whether a plaintiff could collect the cap amount from both the employer and the individual. And if the discrimination against the plaintiff involved several co-employees, would each be liable for the cap amount, based on the size of the employer? Had Congress intended individual liability, it would not have left these questions unanswered and would have incorporated individual liability into the damage limitation scheme in some manner, perhaps by establishing individual damage caps. The court is convinced that the damage caps as they exist indicate Congress's intent that a plaintiff collect damages one time from the employer itself. Thus, even though compensatory and punitive damages are the type of relief an individual could provide—and a type of relief that might very well further the purposes of Title VII—the 1991 amendments

6. The amendments limit damages as follows: "The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
(B) in the case of a respondent who has more than 100 or fewer than 201 employees ..., $100,000;
(C) in the case of a respondent who has more than 200 and fewer than 501 employees ..., $200,000; and
(D) in the case of a respondent who has more than 500 employees ..., $300,000."

to Title VII do not authorize this court to hold an individual liable for such damages. The court, therefore, must grant Shepardson's motion to dismiss.

The court notes that a plaintiff's inability to seek monetary damages from the offending employee will not, in the bulk of cases, make a practical difference. The employer can still be held liable for the acts of its employees, assuming such liability is established under a theory of agency or respondeat superior. Thus, the court's decision to grant Shepardson's motion to dismiss in no way affects Smith's ability to collect from her former employer for any discriminatory actions of Shepardson which she can prove, again assuming that Shepardson was acting as the employer's agent or that the employer is otherwise liable under a theory of respondeat superior. The court does not, therefore, believe that Title VII's remedial purposes will be frustrated by this holding. As the *Miller* court wrote, "No employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation." 991 F.2d at 588. "An employer that has incurred civil damages because one of its employees believes he can violate Title VII with impunity will," the court continued, "quickly correct that employee's erroneous belief." *Id.*

Admittedly, there are, at least, two possible situations in which a denial of individual liability might make a practical difference— where an employer goes bankrupt and where it is necessary to "pierce the corporate veil" to gain access to the assets of an individual owner, officer, or director. *See, e.g., Janopoulos v. Harvey L. Walner & Associates, Ltd,* 835 F.Supp. 459, 461–62 (N.D.Ill.1993); *Vakharia v. Swedish Covenant Hosp.,* 824 F.Supp. 769, 785–86 (N.D.Ill.1993). However, because these circumstances are not presented here, the court need not decide whether and when an exception to the rule against individual liability should exist.

Accordingly, for the foregoing reasons, it is ORDERED that the motion to dismiss, filed by defendant Timothy Shepardson on De-

cember 27, 1993, is granted and that said defendant is dismissed.