**Debra J. MARSHALL, Plaintiff,**

v.

**C.W. "Jake" MILLER, et al., Defendants.**

**No. 94–780–CIV–ORL–18.**

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 4, 1995.

David Brett Kampf, Amari, Theriac & Eisenmenger, P.A., Cocoa, FL, for plaintiff Debra J. Marshall.

William Edward Powers, Jr., Leonard J. Dietzen, III, Powers, Quaschnick, Tischler & Evans, Tallahassee, FL, for defendants C.W. "Jake" Miller, individually and in his capacity as Brevard County Sheriff, Doug Scragg, individually and in his capacity as a Sergeant in the Brevard County Sheriff's Office, Paul Drinkwater, individually and in his capacity as an Agent in the Brevard County Sheriff's Office, Ron Clark, individually and in his capacity as a Chief Deputy in the Brevard County Sheriff's Office, Vernon Weekley, individually and in his capacity as a Commander in the Brevard County Sheriff's Office.

Shannon L. Wilson, Brevard County Atty's. Office, Viera, FL, for defendant Brevard County, FL.

## ORDER

G. KENDALL SHARP, District Judge.

This case is before the court on Defendants' motion to dismiss the complaint (Dkt. 9). Plaintiff Debra J. Marshall (Marshall) alleges that Defendants violated her employment-related rights protected by 42 U.S.C. § 2000e (Title VII) and the Equal Pay Act, 29 U.S.C. § 206(d)(1) (EPA). Marshall's complaint originates from alleged sexual harassment that she suffered while working in the Brevard County Sheriff's Department from April until October 1993, ending in her termination. Defendants have moved to dismiss Marshall's Title VII claim except against Sheriff C.W. Miller (Miller) in his official capacity, and Marshall's EPA claim. The court grants Defendants' motion with regard to Marshall's Title VII claims, but denies the motion with regard to Marshall's EPA claims.

## I. Facts

◼ For purposes of a motion to dismiss, the court must view the allegations made in the complaint in the light most favorable to the plaintiff and assume the allegations in the complaint are true. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). Accordingly, the court assumes the following events occurred. In April 1993, Marshall became an Intelligence Analyst in the Brevard County Sheriff's Department. Despite assurances by Defendant Douglas Scragg (Scragg) that her job would not entail data entry, Marshall's duties solely consisted of data entry throughout her period of employment.

According to the complaint, on or about September 15 Defendant Paul Drinkwater (Drinkwater) made overtly sexual remarks to Marshall, suggesting performing sexual acts on the office floor. When Marshall objected to the comment, Drinkwater allegedly replied, "It doesn't matter what I say, you're going to jump on me anyway." Marshall was subjected to sexual comments both directed specifically at her and in general conversations.

Scragg met with Marshall on or about September 17 to discuss her complaints with regard to the harassing behavior. She learned that a number of her male co-workers in the Special Investigation Division had decided they would no longer speak to her. From that point until her termination Marshall was ostracized at work. On September 28, Marshall spoke with her former supervisor Defendant Vernon Weekley (Weekley) to express her dejection with the current state of affairs and to seek a transfer to his supervision. Weekley said he would speak with Chief Ron Clark (Clark) about the situation. On September 29, Marshall met with Director of Personnel Tony Cannion and Scragg to discuss her complaints. On October 1, Scragg informed Marshall that she had been terminated, on the ground that she disrupted the work environment and "ma[de] everyone uncomfortable."

## II. Legal Discussion

◼ On motions to dismiss for failure to state a claim on which relief can be granted, Defendants must demonstrate that Plaintiff can prove no set of facts which would entitle her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *accord Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). On Marshall's Title VII claim, Defendants assert first that such actions are not appropriately brought against government officials in their individual capacities. Second, Defendants assert that the claim should be maintained solely against Brevard County Sheriff Miller in his official capacity. With regard to the EPA claim, Defendants assert that Marshall failed to allege facts sufficient to support a claim, and that Defendants Scragg, Drinkwater, Clark and Weekley are not "employers" within the meaning of the Act.

### A. Title VII

#### 1. Individual Capacity Suits Against Government Officials

◼ Title VII prevents "employers" from discriminating on the basis of race, color, religion, sex or national origin. 42 U.S.C. 2000e–2(a)(1) (1988). An employer is defined as "a person engaged in an industry affecting commerce ... and any agent of such person." *Id.* at 2000e(b). Though such a definition might be interpreted to impose liability on individual employees as "agents," the Eleventh Circuit has ruled that agents of employers who violate Title VII provisions only trigger an action against the employer, and not an action against the individual agent/employee. *See Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557–59 (11th Cir.1987).

Prior to the Civil Rights Act of 1991, Title VII suits could not be maintained against state and local government officials in their personal capacities. In *Busby v. City of Orlando,* the Eleventh Circuit held, "Individual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the *employer,* not individual employees whose actions would constitute a violation of the Act. We think the proper method for a plaintiff to recover under Title VII is by suing the employer...." *Busby,* 931 F.2d 764, 772 (11th Cir.1991) (emphasis

in original) (citations omitted).[1] The Eleventh Circuit's holding rested in part on the fact that Title VII plaintiffs were eligible only for equitable relief. As such, any discussion of individual liability and corresponding qualified immunity was "inapplicable to the Title VII context." *Id.*

In 1991, however, Congress amended the remedial scheme through which Title VII plaintiffs could obtain relief. Title VII plaintiffs now are eligible for compensatory and punitive damages to remedy intentional discrimination. *See* 42 U.S.C. § 1981a(a) (West Supp.1994). As the Supreme Court has noted, Congress's decision to amend the damages provisions "signals a marked change in its conception of the injury redressable by Title VII." *United States v. Burke*, 504 U.S. 229, ——— n. 12, 112 S.Ct. 1867, 1874 n. 12, 119 L.Ed.2d 34 (1992). Some courts have determined that Congress has altered Title VII such that suits against individual employees should now be permitted, because compensatory damages, as opposed to equitable relief such as reinstatement and backpay, is a type of relief that individuals who intentionally discriminate should be expected to pay. *See, e.g., Wilson v. Gillis Advertising Co.*, 1993 WL 503117 (N.D.Ala.1993); *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172 (S.D.N.Y.1992).

Other courts have held that the 1991 amendments do not justify permitting individual capacity suits. While acknowledging the other cases, the Ninth Circuit held that denying individual capacity suits was the "better rule." *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993), *cert. denied sub nom. Miller v. La Rosa*, ——— U.S. ———, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). Noting that Congress limits Title VII liability to employers with 15 or more employees, the court reasoned, "If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Id.* Following this logic, the *Miller* court pointed to the differentiated amounts of damages available under § 1981a(b)(3) to plaintiffs for Title VII claims, based on the size of the employer. "[I]f Congress had envisioned individual liability under Title VII for compensatory or punitive damages, it would have included *individuals* in this litany of limitations and would have discontinued the exemption for small employers." *Id.* at 588 n. 2 (emphasis in original); *accord Smith v. Capitol City Club of Montgomery*, 850 F.Supp. 976, 980 (M.D.Ala.1994).

Nothing in the legislative history of the 1991 amendments to Title VII suggests that Congress intended to provide for individual liability by extending the prospect of money damages to plaintiffs. Rather, the deterrent effect envisioned by the legislators passing the bill was that the allowance of damages "would provide a stronger incentive for employers to implement effective remedies for intervention and prevention.... Data suggests (sic) that employers do indeed implement measures to interrupt and prevent employment discrimination when they perceive that there is increased liability." H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 69–70 (1991) (quoting Dr. Fraeda Klein), *reprinted in* 1991 U.S.C.C.A.N. 549, 607–08. The other predominant reason cited by the legislators for permitting compensatory damages was to encourage suits by plaintiffs who were reluctant to file suit when the prospect for relief was limited. *Id.*, 1991 U.S.C.C.A.N. at 608 (quoting *Mitchell v. OsAir, Inc.*, 629 F.Supp. 636, 643 (N.D.Ohio 1986)). There was no mention, however, of expanding liability to individual employees in order to further this goal.

In short, there is nothing in the 1991 Civil Rights Act or its history to suggest that Congress intended to expand liability to individuals through the damages amendments to Title VII. Rather, the damages limitations in § 1981a(b)(3) for employers based on the size of their workforce lead this court to conclude that Congress solely provided for

---

**1.** In *Cross v. Alabama*, 1994 WL 424303 (11th Cir.1994), a panel of the Eleventh Circuit suggested that governmental supervisors with policy-making authority may be individually liable for Title VII claims, even prior to the amendments contained in the 1991 Civil Rights Act. *Id.* at *14. The opinion, however, does not explicitly question or distinguish the clear rule in *Busby*, and this court maintains that *Busby* remains controlling precedent.

additional damages for successful plaintiffs against their employers. The court holds that *Busby* remains established precedent in the Eleventh Circuit, and "[i]ndividual capacity suits under Title VII are ... inappropriate." Accordingly, Title VII claims against all defendants in their individual capacities are dismissed.

### 2. Maintaining Multiple Defendants

■■■ Defendants Scragg, Drinkwater, Clark, and Weekley also contend that the claims against them in their official capacities are superfluous, because Sheriff Miller in his official capacity can adequately represent the department. The Supreme Court has noted, "Official capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 691 n. 55, 56 L.Ed.2d 611 (1978)); *accord Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir.1992). In an official capacity suit, only the assets of the governmental entity are available to satisfy a plaintiff's claims. *Yeldell*, 956 F.2d at 1060. The actions by all department employees are relevant to Marshall's claim, but it is unnecessary to maintain these four employees as defendants in this suit. Accordingly, Marshall's claims against these four defendants in their official capacities are dismissed.

### B. Equal Pay Act

#### 1. Failure to State a Claim

■■■ Defendants have moved to dismiss Marshall's claims under the Equal Pay Act because she has failed to allege all of the facts necessary to succeed ultimately in the suit. A court may dismiss a claim only if it is beyond doubt that a plaintiff can prove no set of facts in support of a claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). While Marshall has alleged only that she was paid at a lower rate than male employees performing the same work to support her EPA claim, that allegation is sufficient to withstand a motion to dismiss.

#### 2. Defendants' Status as Employers

■■■ Defendants Scragg, Drinkwater, Clark, and Weekley also assert that they should be dismissed from Marshall's Equal Pay Act claims because they are not "employers" within the meaning of the Act. The definition of "employer" for purposes of the Equal Pay Act includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (1988). The term is to be defined more broadly under the EPA than under the common law in order to achieve the Act's remedial purposes. *See, e.g., McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir.1989). In determining whether these individuals are employers for purposes of the Act, courts look "to the 'economic reality' of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer." *Aimable v. Long and Scott Farms*, 20 F.3d 434, 439 (11th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 351, 130 L.Ed.2d 306 (1994).

At this stage in the litigation, it is impossible to determine whether the employees Marshall has sued had sufficient power over her to be declared her employer in "economic reality." In light of the broad definition of "employer" under the Equal Pay Act, the court cannot dismiss the defendants at this stage. *See Larson v. School Bd. of Pinellas County, Florida*, 820 F.Supp. 596 (M.D.Fla. 1993); *Weiss v. Marsh*, 543 F.Supp. 1115 (M.D.Ala.1981). Accordingly, Defendants' motion to dismiss Marshall's Equal Pay Act claims is denied.

### III. Conclusion

Because Title VII does not authorize individual capacity suits against individual public employees, the court dismisses Marshall's Title VII claims against all defendants in their individual capacities. The court also dismisses Marshall's Title VII claims against Defendants Scragg, Drinkwater, Clark, and Weekley in their official capacities, because Sheriff Miller in his official capacity can adequately represent the Brevard County Sheriff's Department. Accordingly, the court **GRANTS** Defendants' motion with regard to Marshall's

Title VII claims. With regard to Marshall's Equal Pay Act claims, the court **DENIES** Defendants' motion to dismiss, because Marshall may be able to establish facts sufficient to sustain her claim.

It is **SO ORDERED.**