**Audrey D. RUMBEL, Plaintiff,**

v.

**Robert T. SUGGS, an individual, Patricia A. Furnival, an individual, and Tri–County Additions Rehabilitation Services, Inc., a Florida not-for-profit corporation, Defendants.**

**No. 94–1947–CIV–T–24(A).**

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 26, 1995.

Thomas Clifford Saunders, Frost, O'Toole & Saunders, P.A., Bartow, FL, for plaintiff.

---

Mark E. Levitt, Hogg, Allen, Norton & Blue, P.A., Tampa, FL, for defendants.

## ORDER

BUCKLEW, District Judge.

This Cause comes before the Court for consideration of defendants' Motion to Dismiss Counts II–VI of plaintiff's complaint for failure to state a cause of action upon which relief can be granted. (Doc. No. 4, filed December 27, 1994). Plaintiff filed a response on January 18, 1995, (Doc. No. 7).

Plaintiff filed a six count complaint pursuant to 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991, as amended, on December 5, 1994. Defendants move to dismiss Count II through VI. In Counts II and III Plaintiff alleged that defendants Suggs and Furnival, in their individual capacity, violated Title VII. In Count IV and V Plaintiff alleged that defendants Suggs and Furnival committed the tort of intentional infliction of emotional distress. Finally, in Count VI Plaintiff alleged that Tri–County breached the employment contract implied from the Tri–County personnel manual.

In her response, plaintiff Rumbel alleged that she and defendant Suggs, her supervisor at the time, engaged in a sexual relationship over a period of approximately five years. Plaintiff alleged that defendants Furnival and Tri–County were aware of the relationship between Suggs and herself, but made no immediate efforts to remove defendant Suggs as her supervisor. Additionally, Plaintiff alleged that she overheard a conversation between defendants Suggs and Furnival in which they agreed to terminate Rumbel's employment so that she and her relationship with Suggs would not interfere with Suggs' ability to become Director of Tri–County upon Furnival's retirement.

## COUNTS II and III: Title VII Individual Capacity Suits

Prior to the 1991 amendments to Title VII of the Civil Rights Act of 1964, the Eleventh Circuit held that individual capacity suits under Title VII were inappropriate. Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.1991). The Court reasoned that since the proper relief under Title VII is a recovery against the employer and "not individual employees whose actions would constitute a violation of the Act," individual capacity suits are inappropriate. Id.

The 1991 amendments to Title VII broaden the scope of recoverable damages by allowing claims for compensatory and punitive damages where the plaintiff proves intentional discrimination. Previously, the Title VII plaintiff could seek only such relief as reinstatement, backpay, and other equitable relief. Plaintiff Rumbel contends that since the amendments broaden the scope of recovery by including compensatory and punitive damages, the Legislature intended to include claims against the individual as well.

Although the Eleventh Circuit has yet to rule on the effect of the 1991 amendments, district courts within the circuit have addressed the amendments. Most of these opinions conclude that Title VII as amended still prohibits individual capacity suits.[1] The Court is particularly persuaded by the opinions in Smith v. Capitol City Club of Montgomery, 850 F.Supp. 976 (M.D.Ala.1994), and Moore v. Wendy's International, Inc., et al., No. 94–372–Civ–J–16, 1994 WL 874973 (M.D.Fla.1994). These opinions stress two factors. First, Title VII has always limited liability to employers with fifteen (15) or more employees, 42 U.S.S. § 2000e(b), indicating an intent by the Legislature to protect small entities, including individuals, from the cost of litigation. Therefore, Title VII as

---

**1.** The Court is aware of Wilson v. Gillis Advertising Co., 1993 WL 503117 (N.D.Ala.1993). In Wilson, the Court, relying heavily upon the reasoning in Bridges v. Eastman Kodak Co., 800 F.Supp. 1172, 1180 (S.D.N.Y.), held that individual capacity suits were allowed under the 1991 amendments. The Second Circuit, however, has not expressly ruled on the availability of individual capacity suits and the Bridges opinion assumed that such suits were proper.

The opinions which have held otherwise include: Garrett v. Clarke County Bd. of Ed., 857 F.Supp. 949 (S.D.Ala.1994); Moore v. Wendy's Int'l Inc., et al., No. 94–372–Civ–J–16, 1994 WL 874973 (M.D.Fla.1994); Redpath v. City of Overland Park, 857 F.Supp. 1448 (D.Kan.1994); Saville v. Houston County Healthcare Authority, 852 F.Supp. 1512 (M.D.Ala.1994); Smith v. Capitol City Club of Montgomery, 850 F.Supp. 976 (M.D.Ala.1994).

amended prohibits individual capacity suits. *Smith,* 850 F.Supp. at 979 quoting *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993). Second, these opinions stress that since the law in the Eleventh Circuit currently prohibits individual capacity suits, the courts shall follow this law until directed otherwise. *Moore,* No. 94–372–Civ–J–16, at 4 (M.D.Fla.1994). As such this Court is inclined to follow the Eleventh Circuit precedent. Accordingly, Defendants' Motion to Dismiss Counts II and III is granted.

## Counts IV and V: Intentional Infliction of Emotional Distress

■ Florida recognizes the tort of intentional infliction of emotional distress but requires the conduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277, 278–79 (Fla.1985). Specifically, the plaintiff must demonstrate: (1) deliberate or reckless infliction of mental suffering by the defendant, (2) by outrageous conduct, (3) which conduct of the defendant must have caused the suffering, and (4) the suffering must have been severe. *Golden v. Complete Holdings, Inc.* 818 F.Supp. 1495, 1499 (M.D.Fla.1993) (citing *McCarson,* 467 So.2d at 278). Whether or not the conduct meets the high standard of outrageousness is a matter of law to be decided by the courts. *Golden,* 818 F.Supp. at 1499–1500. Furthermore, Florida courts have consistently rejected claims for intentional infliction of emotional distress relating to sexual harassment cases. *Id.* at 1499.

■ In her response, Plaintiff Rumbel reiterates the facts as alleged. Plaintiff alleged that defendants Suggs and Furnival conspired to permit defendant Suggs to engage in sexual relationship with Rumbel, and when Suggs no longer wanted to involve himself in a personal and sexual relationship with Rumbel, Suggs and Furnival conspired to permit Suggs to take over the job duties of Furnival while simultaneously insuring that Suggs did not have to see Rumbel on a day to day basis. Thus, Plaintiff Rumbel alleged that Suggs and Furnival conspired to fire Rumbel not because of her insufficient work performance but rather because it was uncomfortable for Suggs to have Rumbel around once Suggs had finished his sexual relationship with Rumbel.

Although plaintiff reemphasizes her allegations, plaintiff provides no case law which would indicate that as a matter of law the defendants' behavior constituted outrageous conduct. The defendants' conduct must be outrageous in and of itself. Strenuously reiterating the allegations will not make the conduct outrageous.

As previously noted, the standard for "outrageous conduct" is extremely high and Florida courts have consistently rejected such claims in regard to sexual harassment cases. For example in *Ponton v. Scarfone,* 468 So.2d 1009, 1011 (Fla. 4th DCA 1985), the plaintiff alleged that her employer invited her to join him in a sexual liaison. The court held that as a matter of law, the defendant's conduct was not outrageous. *Id.* In *Moore,* No. 94–372–Civ–J–16, at 5–6 (M.D.Fla.1994), the court held that as a matter of law the defendant's sexually explicit statements to the plaintiff and the defendant's attempts to arrange for the plaintiff to accompany him on business trips were not outrageous. In allowing a claim for intentional infliction of emotional distress, the court in *Stockett v. Tolin,* 791 F.Supp. 1536, 1556 (S.D.Fla.1992), stressed the repetitive acts of the defendant which included "groping and kissing," "repeated and offensive touching of the most private parts of Plaintiff's body," "entering the ladies bathroom," and "pinning the Plaintiff against the wall and refusing to allow the Plaintiff to escape." The court noted that these acts constituted the intentional torts of battery, assault and false imprisonment.

In the instant case plaintiff has alleged no conduct on the part of the defendants which would constitute an intentional tort other than intentional infliction of emotional distress. Furthermore, in light of the case law, the facts as alleged fail to constitute outrageous conduct. Finally, the consistent rejection of claims for intentional infliction of emotional distress by Florida courts for cases involving sexual harassment support a dismissal of this count. Accordingly, defen-

**904**

dants' Motion to Dismiss Counts IV and V is granted.

### Count VI: Breach of Contract

 In Count VI plaintiff asserts that Tri–County breached its contract with her by not following the procedures for progressive discipline set forth in Tri–County's personnel manual. Plaintiff contends that since the manual provided for a six (6) step procedure for termination, the policy constituted a contract between Tri–County and its employees. The plaintiff maintains that the explicit disclaimer[2] stating that the manual is not contractually binding fails to destroy the contract. Plaintiff argues that a contract exists because while the terms of the personnel manual may not contain all of the traditional elements of a contract, Florida law permits oral testimony of employers and employees to be introduced into evidence to explain any missing elements provided that such explanation is not at variance with traditional contract interpretation procedures. *American Agronomics Corp. v. Ross*, 309 So.2d 582, 584 (Fla. 3rd DCA 1975). In *American Agronomics*, however, the court specifically noted the existence of a term contract. The employment contract was for one year. Therefore, the correspondence outlining the salary payments was admissible to determine the plaintiff's damages for early dismissal.

In the instant case, the personnel manual explicitly states that the employment with Tri–County is at-will. Plaintiff Rumbel's situation is similar to the case of *Muller v. Stromberg Carlson Corp.*, 427 So.2d 266 (Fla. 2d DCA 1983). In *Muller*, the plaintiff alleged that although no express contract existed between him and his employer, the company policy statement should be determined to give rise to a contract. *Id.* at 269. The court rejected the plaintiff's argument, noting that unless the contract states a particular term, the employment is at-will. *Id.* at 270. Furthermore, the *Muller* court emphasized that an employment policy state-

ment will not create enforceable contract rights for the employee unless the parties explicitly and mutually agree. *Id.* As noted, the Tri–County personnel manual explicitly provides that the manual is not contractually binding. Accordingly, the defendants' Motion to Dismiss Count VI is granted.

Accordingly, it is **ADJUDGED AND ORDERED** that;

(1) The defendants' Motion to Dismiss Counts II–VI of plaintiff's complaint (Doc. No. 4, filed December 27, 1994) is **GRANTED**. Plaintiff shall have **fifteen (15) days** from the entry of this order to amend her complaint.

**DONE AND ORDERED.**

---

**2.** The policy stated, "Therefore, the policies and procedures set forth in this manual prescribe the terms, conditions, and standards of personnel operations for TCARS, the content of which is neither contractually binding upon the agency nor restrictive in terms of amendment or interpretation by the agency" (Doc. No. 1, Exhibit B).

Additionally, the manual provided that Tri–County "adheres to the principles of at-will employment whereby the agency and employees alike can terminate the employment relationship at any time and for any reason" (Doc. No. 1, Exhibit B).