**Kim SCHAFFER, Plaintiff,**

v.

**AMES DEPARTMENT STORES, INC., et al., Defendants.**

**No. 3:94CV724 (DJS).**

United States District Court, D. Connecticut.

May 26, 1995.

Anne Goldstein, Gregg D. Adler, Gould, Livingston, Adler & Pulda, Hartford, CT, for Kim Schaffer.

Burton Kainen, Vaughan Finn, Kainen, Starr, Garfield, Wright & Escalera, Hartford, CT, for Ames Dept. Stores, Inc., Ronald Raymond.

Richard S. Conti, Bruce J. Comollo, Garrity, Diana, Conti & Houck, Manchester, CT, Joshua A. Hawks–Ladds, Sorokin, Sorokin, Gross, Hyde & Williams, Hartford, CT, Julia M. Wiellette, Diana, Conti, Tunila & Comollo, Manchester, CT, for Russell Paquette.

## MEMORANDUM OPINION AND ORDER

SQUATRITO, District Judge.

### I. INTRODUCTION

This cause is now before the court on the motions to dismiss Counts I and II of the Amended Complaint,[1] filed by Defendants, Russell G. Paquette ("Paquette") and Ronald Raymond ("Raymond") on July 5, 1994. Fed.R.Civ.P. 12(b)(6). Documents # 15 & # 20.

Plaintiff, Kim Schaffer ("Schaffer"), filed this action against Paquette, Raymond and Ames Department Stores, Inc. ("Ames") on May 4, 1994. She alleges violation of 42 U.S.C. § 2000e *et seq.*, commonly known as Title VII of the Civil Rights Act of 1964, as amended, as well as several state law claims. She seeks compensatory and punitive damages, equitable relief, costs and fees. Schaffer has properly alleged this court's federal question and supplemental jurisdiction. 28 U.S.C. §§ 1331 & 1367.

For the reasons stated below, Paquette's and Raymond's motions to dismiss are granted.

### II. BACKGROUND

The Complaint alleges the following facts.

---

1. Paquette's and Raymond's motions were filed to dismiss Counts I and II of the original Complaint. On December 5, 1994, Plaintiff filed an Amended Complaint. Since Counts I and II in both Complaints are identical and the underlying issue is fully briefed, the court construes the motions to dismiss as addressed to the Amended Complaint.

Schaffer has been employed by Ames since on or about October 3, 1988. Amended Complaint ¶ 10. In August 1992, she was promoted to the position of Loss Prevention Assistant Regional Director for Region I. *Id.* ¶ 11. As a result of her promotion, her immediate supervisor became Paquette, who was Ames' Loss Prevention Regional Director for Region I. *Id.*

From on or about September 1992 through on or about March 1993, Paquette repeatedly made unwanted sexual comments, innuendos and advances toward Schaffer. *Id.* ¶ 13. She, however, consistently rebuffed these advances. *Id.* ¶ 14. During the period between October and December of 1993, Paquette's harassing behavior included looking down Plaintiff's blouse and confronting her at a company Christmas party and suggesting that they have a child together. *Id.* ¶¶ 16 & 20.

Between January and June of 1993, Paquette became hostile towards Schaffer. His conduct during this period included: (1) giving Schaffer permission to leave a meeting early but yelling at her for doing so and then reporting her to Raymond, Ames's Senior Vice President for Asset Protection; (2) smoking in her presence even though he knew it aggravated her respiratory condition [2]; (3) refusing to cease smoking unless Plaintiff made it "worth his while"; (4) hiring a job applicant whom Schaffer never met for a position it was Schaffer's responsibility to fill; (5) instructing Schaffer to delay going to the emergency room even though she was experiencing severe breathing difficulties; (6) putting his arm around Schaffer and kissing her; (7) preventing her from traveling even though it was central to her job; and (8) interfering with her work. *Id.* ¶ 22–30.

Between February 1993 and May 1994, Schaffer complained about Paquette's conduct to Raymond, Leo Choman ("Choman"), Raymond's assistant, and Dan Pachecos, Ames's Personnel Manager. *Id.* ¶ 28. During this period, Schaffer maintains that Raymond engaged in discriminatory conduct. His actions allegedly included: (1) informing Schaffer that it was inappropriate for a woman to disagree with her supervisor; (2) reprimanding Schaffer for leaving a meeting notwithstanding the fact that Paquette gave her permission to leave; and (3) criticizing her for complaining about Paquette's conduct and implying that she would be fired if she did not stop complaining. *Id.* ¶¶ 31–37.

On or about June 10, 1993, Schaffer took a medical leave of absence from Ames, based on the advice of her doctor. *Id.* ¶ 40.[3] On or about August 18, 1993, Schaffer filed a claim for disability benefits. Subsequently, Ames denied the claim in part. *Id.* ¶ 42.

On May 4, 1994, Schaffer filed this suit against Paquette, Raymond and Ames. In her five-count Complaint, she alleges that all three defendants have violated Title VII by (1) discriminating against her based on her gender (Count I) and (2) retaliating against her because of her opposition to their discriminatory practices (Count II). Moreover, Schaffer contends that both Paquette and Raymond are liable for intentional infliction of emotional distress (Counts III & IV), and that Paquette is liable for invasion of privacy (Count V). In response, Paquette and Raymond filed the instant motions.

## III. STANDARD OF REVIEW

A court may dismiss a complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232; *Cohen v. Koenig,* 25

---

**2.** Schaffer maintains that she had given Paquette a note from her doctor that confirmed that she had a respiratory condition which would be aggravated by smoke. *Id.* ¶ 24.

**3.** She remained on medical leave of absence until on or about June 2, 1994, when Ames informed her that she was being terminated in accordance with its leave of absence policy. *Id.* ¶ 43.

F.3d 1168, 1172 (2d Cir.1994); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Moreover, the court is aware that the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low.

## IV. DISCUSSION

Paquette and Raymond argue that Counts I and II should be dismissed, to the extent that they relate to them, because Title VII does not provide for individual liability on behalf of employees. The court agrees.

Under Title VII, it is unlawful "for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's sex...." 42 U.S.C. § 2000e–2. The term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year, and any agent of such person...." 42 U.S.C. § 2000e.

Federal courts are presently divided on the issue of whether individuals may be held liable under Title VII. Note, *Who, Me?: A Supervisor's Individual Liability for Discrimination in the Workplace*, 62 Fordham L.Rev. 1835, 1836 (1994). At the heart of the debate is the statute's definition of "employer." Specifically, courts have split on the question of whether the "and any agent" language [4] was intended by Congress simply to provide respondeat superior liability or was intended to include "agents" within the definition of "employers" who may be held liable for violations of the Act.

To date, a majority of courts have held that supervisory employees cannot be subjected to personal liability. *Schallehn v. Central Trust & Sav. Bank*, 877 F.Supp. 1315, 1331 (N.D.Iowa 1995) (conceding that majority view rejects supervisor's liability under Title VII); *Wilson v. Wayne County*, 856 F.Supp. 1254, 1264–65 (M.D.Tenn.1994) ("[G]reatest weight of legal authority, ... does not recognize individual liability for Title VII violations."). Amongst the courts of appeals to have addressed this issue, the Fifth, Ninth, Tenth and Eleventh Circuits have held that individual liability may not be imposed against supervisory employees under Title VII or the ADA. *Sims v. KCA Inc.*, 28 F.3d 113 (10th Cir.1994); *Grant v. Lone Star Co.*, 21 F.3d 649, 651–53 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993); *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied sub nom. Miller v. La Rosa*, —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991).[5] On the other hand, the Fourth and Sixth Circuits have either held or implied that individual liability may be imposed. *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *vacated in part on reh'g on other grounds*, 900 F.2d 27 (4th Cir.1990); *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir.1986). *But see Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.1994) (distinguishing *Paroline* and holding that actions against decisionmakers may not be maintained under ADEA), *cert. denied*, —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Johnson v. University Surgical Group Assocs.*, 871 F.Supp. 979, 983 (S.D.Ohio 1994) (Sixth Circuit's discussion of individual liability in *Jones* is dicta).

---

4. This language is also present in the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12111(5)(A).

5. Furthermore, the Eighth Circuit, although not expressly addressing the issue of whether "agents" fall within Title VII's definition of "em-

ployers," has affirmed the dismissal of race discrimination claims against co-workers. *Smith v. St. Bernards Regional Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir.1994). The court concluded that "the claims against individual defendants were properly dismissed because liability under 42 U.S.C. § 2000e(b) can attach only to *employers*." *Id.* (emphasis added).

■ In the absence of controlling precedent,[6] the court is obligated to conduct an independent review of the issue. As a general rule of statutory construction courts should defer to the plain meaning of the language within a statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). A court must move beyond the plain language of a statute, however, when literal application would produce a result demonstrably at odds with the intentions of its drafters. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

■ As a result of its own review of the statute and the plethora of cases, the court finds that supervisory employees cannot be held personally liable under Title VII. Because of the ample discussion on the issue available in prior decisions from other courts, little would be gained from a rehashing of all the arguments on both sides of the debate. Accordingly, the court will focus on the grounds it finds most persuasive for concluding that a supervisory employee cannot be held liable for an alleged violation of Title VII.

In reaching its decision, the court is guided by the Ninth Circuit's reasoning in *Miller* and the United States District Court for Middle District of Alabama's reasoning in

*Smith v. Capitol City Club of Montgomery,* 850 F.Supp. 976 (M.D.Ala.1994). The *Miller* court found two bases from which to conclude that Congress did not intend, either before or after the 1991 amendments to the Civil Rights Act, to impose individual liability on employees. First, it relied on the fact that Title VII has always limited liability to employers with 15 or more employees. 42 U.S.C. § 2000e(b). Based on this limitation, the court concluded that "Congress did not want to burden small entities with the costs associated with litigating discrimination claims." *Miller,* 991 F.2d at 587. "If Congress decided to protect small entities with limited resources from liability," the court continued, "it is inconceivable that Congress intended to exempt small employers but impose liability on individual employees." *Id.* This court similarly finds no basis to conclude from the statutory scheme that Congress intended to exempt small employers but impose liability on individual employees.

Second, the *Miller* court addressed the availability of compensatory and punitive damages under the 1991 amendments to the Civil Rights Act. The amendments placed caps on the availability of damages and based these caps on the size of the employer's workforce. 42 U.S.C. § 1981a(b)(3)(A–D).[7]

---

**6.** To date, the Second Circuit has not addressed the issue of whether Title VII provides for liability against supervisory employees.

Moreover, the district courts within the circuit have split on the issue of whether the discrimination statutes provide for individual liability. *Compare Coraggio v. Time Inc. Magazine Co.*, 94 Civ. 5429 (MBM), 1995 WL 242047, at *8 (S.D.N.Y. Apr. 26, 1995) (finding no individual liability under Title VII); *Ryan v. Grae Rybicki,* No. CV–94–3731, 1995 WL 170095, at *3–4 (E.D.N.Y. Mar. 31, 1995) (finding no individual liability under the ADA); *Romand v. Zimmerman,* No. 94–CV–118, 1995 WL 153398, at *5 (N.D.N.Y. Mar. 31, 1995) (same); *Bradley v. Consol. Edison Co.*, 657 F.Supp. 197, 207 (S.D.N.Y. 1987) (no individual liability under Title VII) *with Donato v. Rockefeller Fin. Servs.*, No. 93 Civ. 4663 (LLS), 1994 WL 695690 at *2–3 (S.D.N.Y. Dec. 12, 1994) (finding individual liability under Title VII); *Gregory v. The Southern New England Tel. Co.*, Civil No. 3:93–CV–192 (AHN), slip op. at 8 (D.Conn. Aug. 19, 1994); *Dirschel v. Speck,* No. 94 Civ. 0502 (LMM), 1994 WL 330262 at *5–6 (S.D.N.Y. July 8, 1994); *Linville v. O & K Trojan, Inc.*, No. 91–CV–284S, 1994 WL 117363 at *19– 20 (W.D.N.Y. Mar. 31, 1994) (finding individual liability under ADEA); *Archer v. Globe Motorists Supply Co.*, 833 F.Supp. 211, 213–14 (S.D.N.Y. 1993) (individual liability requires specific allegations); *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172, 1180 (S.D.N.Y.1992) (finding individual liability under Title VII). *See also Reilly v. Metro–North Commuter RR Co.*, No. 93 Civ. 7317 (PKL), 1994 WL 202720 at *2 (S.D.N.Y. May 20, 1994) (denying plaintiff's motion for leave to amend complaint by adding supervisors in Title VII suit).

**7.** The amendment limits damages as follows:

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

Again, Congress provided that there would be no liability for an employer with fewer than 15 employees. This court agrees with the *Miller* court's conclusion that, "if Congress had envisioned individual liability under Title VII for compensatory and punitive damages, it would have included *individuals* in this litany of limitations and would have discontinued the exemption for small employers." *Miller*, 991 F.2d at 588 n. 2 (emphasis in original). A significant number of district courts considering individual liability under Title VII have reached the same conclusion.[8]

Moreover, there is a practical consideration that counsels against individual liability. It is highly unlikely that Congress could have intended the odd circumstances that result from individual liability based on the statutory scheme as it was enacted. *Smith*, 850 F.Supp. at 980. First, such a scheme would, presumably, base an award of damages against an offending employee on the size of his or her employer. "While gearing the amount of damages to the size of the employer makes sense if the employer is the party to be held liable, it makes no sense if it is the [employee-defendant] who is to be held liable." *Id.* For example, under such a scheme, a plaintiff could recover $50,000 from an offending supervisor at a business with 15 to 100 employees, but $300,000 from an offending supervisor at a large corporation. The damage award would be the same even if both supervisors' salaries were the same and even if they both engaged in the same discriminatory conduct. *Id.*

Second, the damage caps within the statute envision a unity of liability: "The sum of the amount of ... damages ... shall not exceed [a certain sum], ... in the case of a *respondent*" of a certain size. 42 U.S.C. § 1981a(b)(3) (emphasis added). This analysis was discussed in detail by the *Smith* court:

> If both the offending employee and employer were to be liable for monetary damages, Congress would have provided some guidance as to how damages should be apportioned, or, whether a plaintiff could collect the cap amount from both the employer and the individual. And if the discrimination against the plaintiff involved several co-employees, would each be liable for the cap amount, based on the size of the employer? Had Congress intended individual liability, it would not have left these questions unanswered and would have incorporated individual liability into the damage limitations scheme in some manner, perhaps by establishing individual damage caps. The court is convinced that the damage caps as they exist indicate Congress's intent that a plaintiff collect damages one time from the employer itself. Thus, even though compensatory and punitive damages are the type of relief an individual could provide—and a type of relief that might very well further the purposes of Title VII—the 1991 amendments to Title VII do not authorize this court to hold an individual liable for such damages.

850 F.Supp. at 980–81. The court concurs in this reasoning.

Moreover, as *Smith* further pointed out, a plaintiff's inability to recover monetary damages from an offending employee under Title VII will not make a practical difference in a majority of cases. *Id.* at 981. *See Bramesco v. Drug Computer Consultants*, 834 F.Supp. 120, 123 (S.D.N.Y.1993). For instance, in the case at bar, Ames can still be held liable for any discriminatory conduct by either Paquette or Raymond, assuming either was act-

(B) in the case of respondent who has more than 100 or fewer than 201 employees ..., $100,000;
(C) in the case of a respondent who has more than 200 and fewer than 501 employees ..., $200,000; and
(D) in the case of a respondent who has more than 500 employees ..., $300,000.
42 U.S.C. § 1981a(b)(3).

**8.** *See, e.g., Coraggio*, 1995 WL 242047, at *8; *Ryan*, 1995 WL 170095, at 3; *Howard v. Board of Educ.*, 876 F.Supp. 959, 970–71 (N.D.Ill.1995); *Zatarain v. WDSU–Television, Inc.*, 881 F.Supp. 240, 245 (E.D.La.1995); *Marshall v. Miller*, 873 F.Supp. 628, 630–31 (M.D.Fla.1995); *Ostendorf v. Elkay Mfg. Co.*, No. 94 C 50170, 1994 WL 741425 at *5–6 (N.D.Ill. Dec. 29, 1994); *Torres v. Intercontinental Trading, Ltd.*, No. Civ. 94–1057 (HL), 1994 WL 752591, at *4–6 (D.P.R. Dec. 22, 1994); *Smith*, 850 F.Supp. at 979–80; *Johnson v. Northern Ind. Pub. Serv. Co.*, 844 F.Supp. 466, 469 (N.D.Ind.1994); *Stafford v. State*, 835 F.Supp. 1136, 1149 (W.D.Mo.1993).

ing as Ames's agent or that the employer is otherwise liable under a theory of respondeat superior.

The court's holding is consistent with the intent of Congress. Title VII places the burden on employers to purge discriminatory practices from the workplace.[9] Therefore, an employee's response to co-employees' discrimination, now as before, is to file an action against the employer.

Accordingly, the court finds that Paquette's and Raymond's motions to dismiss Schaffer's Title VII claims against them, are due to be granted.[10]

## CONCLUSION

For the foregoing reasons, Paquette's and Raymond's motions to dismiss Counts I and II, to the extent that they relate to them, are hereby GRANTED. Documents # 15 & # 20.

---

**9.** As the *Miller* court recognized, "No employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation." 991 F.2d at 588. "An employer that has incurred civil damages because one of its employees believes he [or she] can violate Title VII with impunity will quickly correct that employee's erroneous belief." *Id.* See *Smith,* 850 F.Supp. at 981 (citation omitted).

**10.** In finding that Title VII does not provide for individual liability, the court joins in the primary reasoning of the majority of federal courts to have addressed this issue. Some courts addressing this issue, however, have come to the conclusion that a supervisor's liability should be divided into two parts, exonerating the supervisor in his or her "personal" capacity, but holding the supervisor liable in his or her "official" capacity. *See, e.g., Coraggio,* 1995 WL 242047, at *9.

This court does not join in the questionable utilization of the official/individual capacity analysis. *Torres,* 1994 WL 752591 at *6 (official/individual capacity framework is inappropriate outside of suits involving the Eleventh Amendment, qualified immunity, or government liability for acts of government agents); *Wilson,* 856 F.Supp. at 1263–64 (same).